## PIONEER GOLD MINING ·CO. *v.* BAKER.

*(Circuit Court, D. California.* March, 1884.)

1. INVALID CONTRACT—CONTRACT ULTRA VIRES CONFERS NO BENEFIT.

   No benefit can accrue to a party in derogation of the interests of a corporation through a contract with any of its officers acting *ultra vires.*

2. SAME—QUASI TRUSTEE.

   A creditor holding the property of a corporation in order to apply the profits thereof to the reimbursement of himself and the payment of its other debts, is analogous to a trustee, and must return to the stockholders the remnant of the property in his hands after the purposes of his *quasi* trust have been subserved.

3. SAME—DEFENDANT PARTY MAY TAKE BENEFIT OF THE FRAUD.

   The stockholders of a corporation may enjoy a benefit that has arisen out of an act done by their officers in the effort to defraud them.

4. SAME—PRACTICE—PARTIES.

   It is not essential, in a suit brought by a corporation against one who retains its property through the invalid contract of its officers, that such officers be made individual parties in the bill.

On Demurrer to Complaint.

*Stewart & Herrin,* for complainant.

*Van Clief & Gear,* for defendant.

Before SAWYER and SABIN, JJ.

SABIN, J., *(orally.)* In this suit a demurrer to the bill has been filed. The grounds of demurrer are: *First,* that the bill does not state facts sufficient to constitute a cause of action; and, *second,* that Chapman and Sayre are necessary parties to the bill.

I shall not attempt an extended review of the case, as I do not deem it necessary, nor have I so thoroughly collated the facts in the case as I should desire, were I to attempt to review it upon all the points raised. But it seems to us that the considerations which I am about to submit are controlling in the matter; and, if so, the demurrer· upon both points must be overruled.

The bill sets out that in 1876 the defendant, Baker, entered into a certain contract, "A," with the Pioneer Mining Company, the predecessor in interest of plaintiff in this suit. This contract was for the purpose of securing the payment to Baker of an acknowledged indebtedness due him from said company, as provided therein. In case this indebtedness was not paid, within three years from the date of said contract, Baker was entitled to take possession of the property and mines of the company, work the mines, and from the net proceeds thereof pay himself the amount due him, with expenses, and a reasonable compensation for his services. Subsequent to that contract, another contract, "B," was entered into between Baker and W. S. Chapman, then president of said Pioneer Mining Company. This contract was made, as alleged in the bill, for the benefit of said company, and, taken in connection with contract "A," there can be little, if any, doubt on this point. It was virtually in aid of contract "A." ·Its

object was the same,—the payment of this very indebtedness of the company to Baker, and also the indebtedness of the Pioneer Mining Company due to the Bank of La Porte, and also the debt of the company to the California Powder Works, nearly $20,000 due to the last-named parties. Now, it will be observed that the sole object of this contract "A" was to pay an indebtedness of the company to Baker, and, as modified by contract "B," the indebtedness to the Bank of La Porte and the California Powder Works, in addition to the indebtedness due Baker. These debts paid, Baker had no further demand or claim upon this property. If it be assumed that Chapman, as president of the company, and Sayre, as one of the directors thereof, in any of the contracts which they severally or jointly entered into with Baker, acted solely in their individual capacity, in violation of their duties as directors of the Pioneer Mining Company and in derogation of the rights of the stockholders of that company, it will be sufficient to say it was beyond their capacity as directors of that company to bind the company by such contracts; but if any benefits accrued to the Pioneer Mining Company by virtue of any of those contracts the company is entitled to the benefits arising therefrom. But taking all of the facts together, as alleged in the bill, no such presumption arises. They may have been careless in the manner in which they executed these contracts, but nothing criminal or fraudulent appears therefrom. They were, all of the time and in all of these contracts which were made, contracting about and handling the property of the Pioneer Mining Company for the purpose of paying and discharging those debts. Certain sales were made upon judgments, and the same purpose and object runs through all of those sales. They were permitted to be made, and were made, in the interest of the Pioneer Mining Company, and to save the property, if possible, for the company, and to prevent its passing from its control. They were made pursuant to an understanding and agreement between Baker and the company, and for its benefit and not its ruin. Baker subsequently executed a mortgage upon this property to secure the payment of the judgment of the California Powder Works obtained against the Pioneer Mining Company, but he executed it only upon and with the written consent of Chapman, and all the time, in all their transactions, it seems to me patent, not only that Baker so understood it, but that Chapman and Sayre also understood that they were managing and handling this property for and on behalf of the Pioneer Mining Company, and to save it for the company. Neither Baker nor Chapman nor Sayre ever assumed to contract in reference to this property upon any other basis than that it was the property of the Pioneer Mining Company, and not the property of Chapman or Sayre, or both, and all of the transactions between these parties, from first to last, had but one object, to-wit, the payment of the various debts of the Pioneer Mining Company, due Baker and others. Baker all the time knew that the property involved in these contracts and sales was the prop-

érty of the Pioneer Mining Company; that it did not belong to Chapman and Sayre individually, or to either of them, and he knew their official relation to the Pioneer Mining Company. If, then, it be true, as alleged in the bill, that Baker has been fully paid, or has been tendered the full amount due him, and for which this property was pledged to him, the Pioneer Mining Company, or its successor in interest, the plaintiff herein, is entitled to a surrender of the property. It was upon this very condition that he was given possession of the property, and under which he has held it and worked the mine. All that Baker has a right to demand is that his debt be paid. The bill alleges that Baker has taken from the mine sufficient money to pay his debt; it also alleges that he refuses to account for the moneys taken from the mine; and it also alleges a tender and demand—a tender of anything that may be due. If these matters set forth in the bill are true, and of course we take the bill as true, it seems to us very plain that Baker, having received from the company, after going into possession of the property, all that is due him, ought to, and must, surrender the property to the company or its successor in interest.

I may observe that in the contract made December 20, 1878, between Chapman and Sayre and Baker, Baker expressly agreed that he would not sell or incumber the mine. The contract provides for the redemption of the property when the debt is paid. In 1882 Baker extended the time for the redemption of the property. Now, if these things demonstrate anything, it appears clear to my mind that Baker, in each and every one of these transactions, and Chapman and Sayre also, considered that he, Baker, merely held this property as a pledge to be handled by him to pay himself his indebtedness; and if he has been paid he ought to surrender the property to the owners.

This is all as to the first point of the demurrer.

As to the second point raised, that Chapman and Sayre should be made parties to the bill, whatever Chapman and Sayre may have done in and about this property and in making these contracts, they acted, in their official capacity, for and on behalf of the Pioneer Mining Company. It is possible, and I believe it is true, that they signed some of these contracts individually, and not in their official capacity; and it might seem, viewing the contracts alone, and not in connection with all of the facts set forth in the bill, that they were of a personal nature. As I observed before, if they sought to do anything in derogation of their duties as trustees and directors of the company, to that extent their contracts might be held void; but, to the extent to which their acts and contracts were beneficial to the company, the company would have a right to the enjoyment of such benefit. All of the contracts which they at any time made were made in regard to the property of the company. They did not assume to own any of the property themselves. They were merely stockholders and directors in the Pioneer company, which fact Baker well knew. If Chap-

man and Sayre are now stockholders in the company, they will, by this action, be benefited to the extent of their interest in the company, whatever the interest may be. If they are not stockholders, they have no interest in the matter, one way or the other. It is barely possible that they might have been joined as proper parties, though I do not see that point clearly; but I do not think that in any sense they are necessary parties to the bill as made. There is no relief demanded against them. There is nothing demanded of them, one way or the other. They merely appear in this case as actors in the contracts and matters set forth in the bill. Their actions in the various matters set forth are those of directors of the company, and no claim or demand is made against either of them. We therefore think that, even if, under any construction, they might be proper parties to the bill, they certainly are not, from anything disclosed upon the face of the bill, necessary parties thereto.

The demurrer, therefore, is overruled upon both points.

SAWYER, J., (*orally, concurring.*) I desire to make an observation or two in addition to what has been said by my associate. There is some point made and a considerable argument had on the fact that there was no valid conveyance from the Pioneer Mining Company to Baker. These parties, Chapman and Sayre, so far as appears, were not authorized to convey, and they did not attempt to convey, to Baker. There does not purport to be any conveyance from them to Baker. The legal title, which became vested in Baker, did not pass through that channel, but through a purchase at a sheriff's sale under the judgment in favor of the California Powder Works, instead of another decree of foreclosure in favor of Baker for $100,000, as it seems to have been at first contemplated. But the sale and purchase were made in pursuance of an express agreement and understanding that the mine and other property of the Pioneer Mining Company should be redeemed upon terms expressed in the agreement. The result of the various agreements, in substance, was that Baker should purchase the property in question at the sheriff's sale under the powder works judgment; should have possession, work, and develop the mine, pay all the necessary expenses, together with a reasonable compensation for his own services, and pay the amount of his own claim against the company, the powder works judgment, and all other indebtedness of the Pioneer Mining Company specified in the agreement, within a designated time, out of the proceeds of the mine; and when this should be accomplished, or when the sums provided for should be otherwise paid, on behalf of the Pioneer company, the property remaining should be restored to said company, or to said Chapman and Sayre. The time within which this was to be done, so as to prevent the title becoming absolute, was limited. The sale took place and the purchase was made by Baker under the powder works judgment, and the title vested in pursuance of the agreement,

and upon the conditions indicated in it. The fact that the legal title of the corporation vested in Baker through a sale on the judgment, instead of a conveyance by the company, under the circumstances, cannot affect the question involved or the rights of the parties. The sheriff's sale is merely the channel through which the legal title passed, but the sale took place, and the title, nevertheless, passed in pursuance of the agreement and subject to its conditions. We must presume that if this agreement had not been made other arrangements would have been made to avert a forced sale on the judgment. The company, at least, had a right to make other arrangements. It cannot be presumed that productive mining property of the value, as alleged and admitted by the demurrer, of half a million dollars, would have been allowed to be sacrificed for the indebtedness provided for in the agreement, of, say, $150,000. The title passed by virtue of the sheriff's sale, which was made in pursuance of, and in subordination to, the understanding between the parties, and subject to the prescribed conditions that the property should be held and worked until the designated moneys due should be paid, either by the company or Chapman and Sayre themselves, or satisfied out of the proceeds of the mine and property sold. There are subsequent supplementary agreements, whereby Baker extended the time for the performance of the prescribed conditions upon which the title should be restored. The title in Baker was not to become absolute, except upon a failure in the performance of the prescribed conditions to secure payment of the demands provided for. Though not called a defeasance, and not a defeasance in form, the conditions of the several agreements are substantially in the nature of a defeasance, giving and continuing a right of redemption, for the benefit of the Pioneer company. Or the instruments may be regarded, in substance, as declarations of the trusts, upon which the title vested under the sheriff's sale. The corporation was the owner of the property sold, and the first contracts were, in form, made in his name. The corporation was recognized in all subsequent agreements as owner of the property, and it was the corporation's indebtedness that was to be paid out of the property. The transaction was intended to secure Baker for the moneys due him, and such other expenses and indebtedness as he should pay or should accrue in pursuance of the agreements made. The transaction was, in substance, either a mortgage, pledge, or trust, to enable Baker to satisfy the debts of the Pioneer company provided for out of the property sold,—out of its own property. The whole transactions set out in the bill were transactions relating solely to the property and the indebtedness of the Pioneer Mining Company. It is manifest, in the nature of things, from the facts alleged, that these transactions, on one side, were intended to be for and on account of the corporation. Whether we call the sale and conveyance in pursuance of it, under the circumstances set out in the bill, technically, a mortgage, a pledge, a trust, or by any other name, the

facts alleged are such as entitle the complainant to relief upon the face of the bill. Whatever technical name may be given to the transaction, it was intended to put the title of the mine and property of the corporation in the hands of Baker, for the purpose of working and developing the mine, paying the expenses and designated indebtedness of the corporation, and compensation for his own services, out of the proceeds; and when this should be accomplished, or when the money and expenses provided for should be otherwise paid, to restore the property remaining to the Pioneer Mining Company.

It is alleged in the bill that those moneys so intended, and secured to be paid, have all been paid out of the proceeds of the mine. If not, that the complainant has offered to pay, and that it is now ready to pay, any balance that may be found due on an accounting. If these allegations are true, and the demurrer admits their truth, then the indebtedness of the Pioneer Mining Company, contemplated, has been paid out of the proceeds of the property of this company, and not out of the property of Chapman and Sayre, or of either of them; and the complainant, the successor in interest of the Pioneer Mining Company, is entitled to a reconveyance of the mine and other property sold under the judgment mentioned; and if the defendant refuses to reconvey, then, clearly, it seems to me, it is entitled to the relief prayed in the bill.

On the other point, that Chapman and Sayre are indispensable parties to the bill, I do not know what the pleadings and proceedings may develop in the subsequent stages of the case, but there is nothing on the face of the bill, as it now stands, to show that Chapman and Sayre are indispensable or necessary parties to the bill. No relief is asked against them, and it does not appear that they personally claim any interest in their own behalf either against the complainant or the defendant. The court can order them to be brought in at any time when it appears that the rights of the present parties to the bill cannot be fully and finally determined without their presence. They would, perhaps, be proper parties, but there is nothing disclosed on the face of the bill as it now stands to render it necessary to make them parties. As before stated, the agreements first set out were made in the name of the corporation. The subsequent agreements in the names of Chapman and Sayre, in form, all recognize the title of the property as being in the corporation, and all the agreements and proceedings relate exclusively to the property and the indebtedness of the corporation, and are intended to facilitate the payment of the indebtedness of the corporation out of its own property. Chapman and Sayre were, in fact, two out of the three trustees, and they owned all the stock except one forty-eighth part. According to the allegations of the bill, the indebtedness of the corporation had been paid out of the proceeds of the working of the productive mine, owned by the corporation, subject only to the incumbrances indicated, in pursuance of the terms of the various agreements, and of the trusts

thereby imposed on Baker; and the property remaining, after satisfying the demands provided for, is, in equity, the property of complainant. But had Chapman and Sayre redeemed with their own money, in pursuance of the terms of their several agreements, the corporation would doubtless have been entitled to take the property upon payment of their advances. They were trustees for the corporation, and would not be permitted to take advantage of their own position as such to obtain a title to the property as against the corporation, in violation of their trusts, through the transactions set out.

I concur in the order overruling the demurrer.