**WISCONSIN WELFARE RIGHTS ORGANIZATION, on behalf of its members and all other persons similarly situated, Plaintiffs,**

**v.**

**Frank NEWGENT, Individually and as Administrator of the Division of Family Services of the Wisconsin Department of Health and Social Services, Wilbur J. Schmidt, Individually and as Secretary of the Wisconsin Department of Health and Social Services, George Handy, M. D., Individually and as State Health Officer of the Division of Health of the Wisconsin Department of Health and Social Services, Arthur Silverman, Individually and as Director of the Milwaukee County Department of Public Welfare, and their agents, employees, successors in office, assistants and all others acting in concert or cooperation with them or at their direction or under their control, Defendants.**

No. 75–C–102.

United States District Court,
E. D. Wisconsin.

June 8, 1977.

Lawrence G. Albrecht and Cynthia G. Schneider, Milwaukee Legal Services, Inc., Milwaukee, Wis., for plaintiffs.

A. Frank Putz, Asst. Corp. Counsel, Milwaukee, Wis., for City.

Ward L. Johnson, Asst. Atty. Gen., Madison, Wis., for State.

## MEMORANDUM AND ORDER

### I. INTRODUCTION

WARREN, District Judge.

The plaintiff in this action seeks declaratory and injunctive relief for alleged failures on the part of the defendants to comply with Early and Periodic Screening, Diagnosis and Treatment Program (EPSDT) pursuant to the requirements of the Social Security Act, 42 U.S.C. § 1396d(a)(4)(B) and the United States Department of Health, Education and Welfare (HEW) regulations and program regulation guidelines. Four major areas are alleged to be deficient: (1) the implementation of EPSDT in Wisconsin; (2) the content of the Outreach program; (3) the content and Administration of EPSDT screening program; and (4) the content and administration of EPSDT diagnosis and treatment program.

A motion for summary judgment has been filed on behalf of the plaintiff as to all four areas. That motion is the subject of this memorandum. Prior to the resolution of the motion, however, the class action aspect of the suit must be resolved.

### II. CLASS ACTION

This action was filed by the Wisconsin Welfare Rights Organization, an unincorporated association of Welfare recipients and other low-income persons residing throughout the State of Wisconsin. The class which plaintiff seeks to represent is comprised of all children up to age twenty-one in Wisconsin who are eligible for medical benefits under the provisions of Title XIX of the Social Security Act.

This action is directed at state officials who administer and supervise the state programs established under Title XIX as well as one local official of Milwaukee County who is the Director of the Milwaukee County Department of Public Welfare. The statement of claims contained in the complaint allege violations of the Equal Protection Clause, Due Process Clause, and Supremacy Clause of the Constitution as well as violations of federal laws.

The Court finds that the class is so numerous that joinder of all members would be impracticable, there are questions of law and fact which are common to the class, that the claims present are typical of the claims of the class, and that the plaintiffs herein will fairly and adequately protect the interest of the class. The claims herein allege that the defendants have acted on grounds applicable to the class as a whole and that any declaratory or injunctive relief given in this case would most appropriately be given to the class as a whole.

The Court does therefore certify the requested class, denominated above, under the provisions of Rule 23(b)(2).

### III. THE MOTION FOR SUMMARY JUDGMENT

The motion presently before the Court is based on the failure of the defendants to comply with the applicable federal law. No argument has been asserted by the plaintiff as to the alleged Constitutional violations asserted in the complaint. This memorandum will, therefore, discuss only the claims of violations of federal law.

#### A. The Implementation of EPSDT in Wisconsin

The initial area attacked by the plaintiff is that the State of Wisconsin failed to meet the deadlines for implementation set out in the statute and administrative regulations.

Section 1396d(a)(4)(B) of Title 42 U.S.C. provides that the participating states must provide:

[E]ffective July 1, 1969, such early and periodic screening and diagnosis of individuals who are eligible under the plan and are under the age of 21 to ascertain

their physical or mental defects, and such health care, treatment, and other measures to correct or ameliorate defects, and chronic conditions discovered thereby, as may be provided in regulations of the Secretary. 42 U.S.C. § 1396d(a)(4)(B).

While the effective date of the statute was July 1, 1969, final HEW regulations implementing the EPSDT program were not published until November 9, 1971 (36 Fed.Reg. 21409 (1971)) and became effective on February 7, 1972 (45 C.F.R. § 249.-10(a)(3), (b)(4)(ii)). On June 28, 1972, the final regulation guidelines for the EPSDT program were issued by HEW as part of the Medical Assistance Manual, Part 5, Sections 5–70–00 *et seq.* (MSA–PRG–21)

The initial EPSDT program regulations promulgated by HEW, and effective February 7, 1972, provide in part:

(iv) That early and periodic screening and diagnosis to ascertain physical and mental defects, and treatment of conditions discovered within the limits of the State plan on the amount, duration, and scope of care and services, will be available to all eligible individuals under 21 years of age; and that in addition, eyeglasses, hearing aids, and other kinds of treatment for visual and hearing defects, and at least such dental care as if necessary for relief of pain and infection and for restoration of teeth and maintenance of dental health, will be available, whether or not otherwise included under the State plan, subject, however, to such utilization controls as may be imposed by the State agency. If such screening, diagnosis, and such additional treatment are not available by the effective date of these regulations to all eligible individuals under 21 years of age, the State plan must provide that screening, diagnosis, and such additional treatment will be available to all eligible children under 6 years of age, and must specify the progressive stages by which screening, diagnosis, and such additional treatment will be available to all eligible individuals under 21 no later than July 1, 1973.
45 C.F.R. § 249.10(a)(3)(iv).

On or about May 30, 1972, Wisconsin filed an official statement of Amended Plan to its State Title XIX plan with the Department of HEW. The amended plan proposed progressive steps for achieving coverage under EPSDT.

For children under 6 years of age full implementation to be accomplished by December 31, 1972.

For children 6 through 11 years of age full implementation to be accomplished by March 31, 1973.

For children 12 through 21 years of age full implementation to be accomplished by July 1, 1973.

The plaintiff, in the reply brief, argues that this is a clear violation of their rights and authorizes both declaratory and injunctive relief. The defendants, in their answer, have denied that the dates were mandatory.

The Court is of the opinion that it need not decide at this point whether the dates are "mandatory" or not. Assuming that the defendants failed to meet the implementation dates required, this fact would not support injunctive relief for that question is to be resolved on the current state of events not past events. *Woodruff v. Lavine*, 399 F.Supp. 1008 (S.D.N.Y.1975). Declaratory relief would serve no valid purpose and the Court declines to grant such relief on this issue.

This aspect of the motion for summary judgment must, therefore, be denied. The Court would note that a declaratory judgment on the failure of the defendants to timely implement the EPSDT program was not specifically requested in the prayer for relief nor stated in the statement of claims.

**B. The Outreach Program**

The regulations published by HEW implementing the EPSDT program state in part:

A state plan for medical assistance under title XIX of the Social Security Act must . . . with respect for the [EPSDT program], provide

(i) For establishment of administrative mechanisms to identify available screening and diagnostic facilities, to assure that individuals under 21 years of age who are eligible for medical assistance may receive the services of such facilities, and to make available such services as may be included under the State plan;

(ii) For identification of all eligible individuals, including those who are in need of medical or remedial care and services furnished through title V grantees, and for assuring that individuals eligible for title V services are informed of such services and are referred to title V grantees for care and services, as appropriate;

45 C.F.R. § 249.10(a)(3).

The final regulation guidelines for the EPSDT program, Part 5 of the Medical Assistance Manual, Sections 5–70–00 et seq. (MSA–PRG–21), provide in part:

The 1967 amendments to title XIX of the Social Security Act added a requirement to Medicaid that was intended to direct attention to the importance of preventive health services and early detection and treatment of disease in children eligible for medical assistance. This corresponded to a similar amendment to title V of the Act. Through this amendment Congress intended to require States to take aggressive steps to screen, diagnose and treat children with health problems. Congress was concerned about the variations from State to State in the rates of children treated for handicapping conditions and health problems that could lead to chronic illness and disability. Senate and House Committee reports emphasized the need for extending outreach efforts to create awareness of existing health care services, to stimulate the use of these services, and to make services available so that young people can receive medical care before health problems become chronic and irreversible damage occurs.

MSA–PRG–21, § 5–70–20(A).

. . . . .

The State agency must have an outreach program to inform AFDC families and other eligible individuals about the screening program and to encourage them to take advantage of this service.

. . . . .

The State agency must seek out and develop agreements with facilities and practitioners throughout the State that can provide screening and diagnostic services for early casefinding purposes.

. . . . .

To actively seek out eligible individuals for the EPSDT program, the State agency should develop procedures: (a) to inform parents that these services are available for their children, and when and where they are provided; (b) to make sure that they understand the nature and purpose of the screening program; (c) to enlist the help of other community agencies in casefinding activities; and (d) to assure that families are helped, if they need such assistance, to obtain transportation to the screening center and for diagnostic studies and treatment.

Id., §§ 5–70–20(B)(6), (B)(7), (D)(1).

Additionally, the 1972 amendment to the Act included a penalty provision for states which fail to "inform all families in the state receiving aid to families with dependent children . . . of the [EPSDT program]." 42 U.S.C. § 603(g).

In *Stanton v. Bond*, 504 F.2d 1246 (7th Cir. 1974), the Seventh Circuit, after reviewing the above regulations and guidelines, stated: "The mandatory obligation upon each participating state to aggressively notify, seek out, and screen persons under 21 in order to detect health problems and to pursue those problems with the needed treatment is made unambiguously clear by the 1967 act and by the interpretative regulations and guidelines." *Id.* at 1250. The Court then upheld an order entered by the district court enjoining the defendants from violating 42 U.S.C. § 1396d(a)(4)(B) and the regulations issued thereunder and ordering the defendants to

establish a program "in substantial compliance with the regulations and guidelines." *Id.* at 1251.

■ The plaintiff in this action argues in the summary judgment motion that the guidelines in respect to the outreach program are mandatory on the states. The holding in *Stanton v. Bond*, however, is not so broad. The state need not comply specifically with each and every aspect of the guidelines. What is required is that there be an aggressive outreach program calculated to notify potential recipients of the availability of the EPSDT program.

In support of the motion asserted against the state defendants, the plaintiff presents the following facts. The Department of Health and Social Services of the State of Wisconsin requires that the counties advise the state that presently certified AFDC recipients have been notified in writing of the availability of EPSDT services. This is the only report of outreach activities required by the state. Counties are not required to report that the following groups were notified.

Title XIX certified children living in foster homes

Title XIX certified individuals between the ages of 18–21

Title XIX certified children between the ages of 0–18 whose families do not receive AFDC; and

All other medically indigent children not currently certified for Title XIX

No activity other than the annual notification to AFDC recipients is required by the State.

Other facts which the plaintiff relies on are the lack of records of media broadcasts and financial expenditures for the EPSDT. The state defendants have also admitted that the state agency does not make special mailings or direct special activities at migrant farm workers or the Native American population.

The record in this case indicates that the State of Wisconsin has delegated the responsibility for performing outreach for the EPSDT program to the various county departments of social services or public welfare. The administration of the program is accomplished through the county agencies. The plaintiff has not attacked this delegation of responsibility to the political subdivision nor is the Court aware of any statute or regulation which would prevent it.

In early 1973, the county agencies were informed of their responsibility in this matter and suggested methods of fulfilling that responsibility were given. The state through Blue Cross conducted an initial interest survey in March of 1973. The survey was sent to heads of households as indicated on the master medicaid eligibility file. After the data was assimilated, lists were prepared and sent to the appropriate county departments for outreach and appointment. Training sessions for county personnel involved in the outreach program were conducted by the state during 1974. The record also reveals that the state supplies the county agencies with brochures concerning the EPSDT program.

The principal attack of the plaintiff in this motion against the state is its failure to require certain activities and its failure to maintain statistics. While the state does not require mailings to any group other than AFDC recipients, the record in this case concerning the outreach program in Milwaukee County, the only county activity thus far explored, shows that mailings are being made to the groups identified by the plaintiff: Title XIX children living in foster homes; Title XIX children whose families receive general relief; Title XIX children between the ages of 18 and 21; Title XIX children between the ages of 0 and 18 whose families do not receive AFDC. The only group identified which do not receive mailings is "all other medically indigent children not currently certified for Title XIX." This group by definition is unknown. It would be impossible to send mailings directly to them.

While the state does not maintain statistics on media broadcasts regarding the EPSDT program, a film prepared by HEW with locally adapted tag lines was distributed to all Wisconsin television stations and

two out-of-state stations which service the state. There is also indications in the record that news releases to newspapers and radio stations have been reported.

█ The basis for the motion against the state defendants then is based solely on their failure to maintain records and require certain activities. In view of the fact that the prime responsibility for outreach has been delegated to the counties, and that delegation has not been attacked, the failure of the state to require certain activities will not support the motion. Likewise, the failure to maintain statistics on financial expenditures and media broadcasts will not support the motion. The fact that no statistics are kept and that specific requirements are not delineated does not in the Court's opinion establish that there is no effective and aggressive outreach program in Wisconsin.

The plaintiff has also attacked the outreach program conducted in Milwaukee County. The following facts are relied on by the plaintiff.

(1) The 1974 outreach letter was not mailed to specific groups;

(2) the 1974 letter was not available in Spanish;

(3) the 1975 letter was not sent to a specific group;

(4) the Milwaukee County outreach program consists of little beyond the annual letter in that,

(a) no attempt has been made to subcontract for outreach with community groups;

(b) the MCDPW has made no contact with representatives of the Native American community;

(c) there has been no special efforts directed at the Latin community nor do any MCDPW personnel speak Spanish;

(d) there are no health education activities;

(e) there are no efforts at personal contact;

(f) very few records are kept of outreach activities;

(g) the staff and budget for the program is small.

While the record does show that the groups identified by the plaintiff did not receive the outreach letter in 1974, the record also shows that they did receive the letter in 1975. The only exceptions is the group which is comprised of eligible children who are not certified for Title XIX benefits. This is the unknown group discussed earlier. Likewise, while the 1974 letter was not available in Spanish, as of July, 1974, all material prepared by MCDPW for distribution specifically to EPSDT eligibles is in English and Spanish on the reverse sides. The brochures prepared by the state are now printed in Spanish also.

The list of facts seeking to establish that the Milwaukee County program consists of little beyond the annual letter may be noted as deficiencies in the program, but it does not accurately reflect the outreach program in the county shown by the record in this case.

The MCDPW has established and publicized a telephone number for potential recipients to call to obtain information concerning the program. A system has been devised to follow up on appointments made for individuals to remind them of the time and place for the appointments and to check if the appointment was kept. Assistance is offered if a problem arises as to transportation or child care services. Contacts have been made with various community groups in an effort to publicize the program such as the Migrant Opportunities Service, the Drug Abuse Program of the Community Relations Social Development Commission, and the NAACP. In her deposition taken on May 28, 1975, Ms. Rena Safer, who has managerial responsibility for the outreach program in Milwaukee County, stated:

In terms of community agencies we have gone out and contacted various agencies that serve people where we think they might potentially have Title 19 eligibles among their clientele and have described the program to the staff of

these agencies so that they are in a position to approach it or bring it up and have supplied them with one or more types of the brochures.

Directors of day care centers and neighborhood centers have been notified and are part of the outreach information network.

In addition to the above programs, the record reflects that the program has had media coverage including television and radio as well as three local newspapers. The MCDPW has participated in health fairs to publicize the program and have had a mobile display printed and mounted for this purpose.

 In view of the state of the record, the Court cannot conclude that there is no material issue as to whether the outreach program is effective and aggressively pursued. The facts that statistics are not kept and that the staff and budget are small are at best facts giving rise to a presumption in favor of the plaintiff. They cannot serve as a basis for summary disposition of this case. Nor does the failure of the defendants to contest the findings of fact proposed by the plaintiff serve as a basis for the motion. The plaintiff has the burden of showing that there are no material issues of fact and that it is entitled to the relief requested. The plaintiff has not met that burden.

 The plaintiff also seeks to rely on the statistics showing the actual screenings which have taken place in Wisconsin since the implementation of the program. As stated by the district court in New York, "compliance with the statute and regulations does not require that a fixed percentage of eligible children be screened; compliance is measured by availability of services to eligibles who request them." *Woodruff v. Lavine*, 417 F.Supp. 824 (S.D.N.Y.1976). The facts again at best raise a presumption and must be considered by the trier of fact in deciding whether an aggressive program exists.

The fact is that the program is voluntary; intended beneficiaries cannot be compelled to participate. A carrot may be offered but a stick may not be used. Despite the best efforts of administration

to popularize such a program, it will still meet with resistance or indifference by members of the socio-economic group for whose benefit it is intended. *Id.* at 827.

For the reasons stated above the plaintiff's motion for summary judgment as it pertains to the outreach program must be and hereby is DENIED.

### C. The Content and Administration of the Screening Program

The plaintiff organization has also moved for summary judgment on the basis of the content and administration of the screening program in Wisconsin. Declaratory and injunctive relief is requested for the failure of the defendants to comply with the federal statutes and regulations.

#### (1) Content

The plaintiff identifies several areas which it argues constitutes "major deficiencies" in the screening program. These areas are the basis for the motion: The failure of the Wisconsin uniform screening package to "incorporate any screens, procedures, or tests determined to assess the mental health of the individual. . . ."; the failure of the package to mandate the following screens: (a) any dental inspection whatsoever for children aged 0–4, 6–7, 9–13, 15–21, (b) head circumference for ages 0–3 years, (c) developmental assessment, (d) unclothed physical examination, (e) sickle cell test for Negro children, (f) tuberculin test, (g) urine screening and (h) lead poisoning screening; the failure of the package to require some screening procedures annually.

HEW regulations for the EPSDT program provide:

(iv) That early and periodic screening and diagnosis to ascertain physical and mental defects, and treatment of conditions discovered within the limits of the state plan on the amount, duration, and scope of care and services, will be available to all eligible individuals under 21 years of age; and that in addition, eyeglasses, hearing aids, and other kinds

of treatment for visual and hearing defects, and at least such dental care as is necessary for relief of pain and infection and for restoration of teeth and maintenance of dental health, will be available, whether or not otherwise included under the State plan, subject, however, to such utilization controls as may be imposed by the State agency. . . . 45 C.F.R. § 249.10(a)(3)(iv)

The final EPSDT guidelines (MSA–PRG–21) in a section which summarizes the basic provisions of the program, state as follows:

1. Under this regulation, a State agency must provide for an assessment of an individual's physical and mental health. The State agency, through consultation with health experts, should determine the specific health evaluation procedures to be used and the mechanisms needed to be used and the mechanisms needed to carry out the screening program.

 At a minimum, screening should include: a health and developmental history (physical and mental); and assessment of physical growth; developmental assessment; inspection for obvious physical defects; ear, nose, mouth and throat inspection (including inspection of teeth and gums); screening tests for cardiac abnormalities, anemia, sickle cell trait, lead poisoning, tuberculosis, diabetes, ections and other urinary tract conditions; and assessment of nutritional status and immunization status. An assessment of this nature is necessary to identify individuals with potential or apparent physical or mental health and development problems requiring diagnosis and, possibly treatment. Further discussion of screening will be found in Section E7.
 MSA–PRG–21 § 5–70–20–(B)(1)

Section 5–70–20(E)(7) and (8) of the program guidelines provide:

7. It is recommended that the elements described below be included as the minimum content of this program to prevent disease, chronic illness and

disability and to detect incipient physical and mental health problems. In planning for inclusion of these procedures, appropriate professional consultation should be utilized.

Following this introductory comment is a list of fourteen procedures or screens with a short description of the procedure.

█ The plaintiff has argued that the Medical Assistance Manual is binding on the states as published regulations. The Court does not agree.

The language of the manual itself dictates that no intent to make the provisions of the manual binding was present when HEW issued the guidelines. At the specific section now in question, the following language appears:

In the interest of possibly mandating a minimum package of screening procedures, SRS is conducting further consultation with authorities in the field of child health. If this consultation leads to the conclusion that such mandating is supportable according to substantial professional judgment, an appropriate revision of these guidelines will be issued. Until such time, however, the elements described below should be regarded as the minimum recommended components of a screening program.

The only import which the Court concludes can be drawn from this language is that the procedures recommended are to serve as a guide to the states in implementing the program. They were not intended to be mandatory.

This conclusion is supported by a letter from the Commissioner of the Medical Services Administration of HEW. In a letter to the Assistant State Solicitor General of the State of Colorado on May 9, 1975, he stated:

In response to your question concerning the effect the Medical Assistance Manual has upon the States implementing the EPSDT program, it must be emphasized that the manual provides guidelines with respect to the reasonable and adequate implementation of the EPSDT regulations. They do not have the mandatory

effect of the specific items enumerated in the regulations except where issues in guidelines are directly related to the regulations.

This same conclusion has been reached by the district court in Colorado. *Louato v. Shea,* No. C–4790, (D.Col. Oct. 29, 1975).

The issue presented by the complaint in this action was stated by the district court in *Woodruff v. Lavine, supra.*

Performance is not to be tested by the ideal of perfection, but rather by the standard of substantial compliance with the statute and regulations. The test of compliance is not the proportion of the eligible population that participates in the program, but whether the State and City have and are taking "aggressive steps to screen, diagnose and treat" children with health problems.

*Id.* at 237.

While the Court is of the opinion that the Medical Assistance Manual does not have the force and effect of law, it does feel that the guidelines and recommended standards can be utilized in determining whether the defendants are in "substantial compliance with the applicable statutes and regulations." *Stanton v. Bond, supra; Louato v. Shea, supra.*

Prior to examining the individual claims of the plaintiff, a note should be made of the state's uniform screening package. The State of Wisconsin, through the DHSS, implements the screening program under EPSDT by contracting with local public health agencies to provide the screening program. The state agency remains responsible for administering the program and assists the counties in its operation.

The state has published a list of minimum screening services which the counties must provide to all eligible persons up to age 21. That list includes:

Health history
Physical assessment
Height and weight
Dental inspections for ages 3, 5, 8, and 14 years
Anemia test (hematocrit or hemoglobin) for ages 3–5 and 7–20 years

Vision test (Snellen and penlight with occluder for ages 3–5 and 7–20 years

The list is intended as a minimum only and does not restrict the services which can be offered.

The plaintiff contends that the failure of the state to include the other recommended screens constitutes a violation of the statutes and regulations. Under the standard set forth above, the Court feels that the appropriate inquiry is into the services actually given rather than those which the state requires.

The first area noted as being deficient is in the assessment of mental health. Neither the required list of screens nor the list of those actually given by the counties as documented in the record specifically include a screen denominated as a test to ascertain the mental health of the child involved. It should be noted, however, that the guide which the Court is to use, the Medical Assistance Manual, does not include a specific screen for this purpose. The screens relating to history and developmental assessment would appear to be somewhat related to this area, although no opinion evidence in this regard has been tendered by either side. The record already developed in this case indicates that the history screen was available in almost every county and the developmental test in several counties in June of 1974.

The Court would opine that the facts as to the effectiveness of the screening program in regard to mental health assessment are not sufficiently developed at this point to warrant summary judgment.

The evidence is also insufficient as to the failure to provide the remainder of the screens identified to warrant summary judgment. The record reveals that dental inspections are being conducted in all counties (the frequency of those inspections will be discussed below) as well as the head circumference screen. While the remainder of the screens according to the record in this case were not being given in all counties in 1974, the Court does not feel that

this is sufficient evidence to warrant a declaration that the program is not being aggressively implemented in the state. Nor do the statistics cited by the plaintiff warrant such action. Only 1.5 percent of those screened received a sickle cell test. No statistics are available however as to what percentage of those screened were Black children or of the Black children screened how many had previously been tested. Only 9.3 percent received lead poisoning tests. The record does not reveal what percentage of those screened were over six years of age. (The guidelines indicate that this group should be tested "when medically indicated.")

The plaintiff has also indicated that the Denver Developmental Test being used by the state is somewhat inadequate. There is, however, no evidence from which this fact can be concluded.

All of these factors mentioned above must be considered by the trier of fact in determining whether the state screening program is in substantial compliance. The isolation of particular facts cannot serve as a basis for a summary judgment in this action.

In support of its motion concerning the periodicity of the screening program, the plaintiff argues that section of the Medical Assistance Manual which states: "Some procedures should be done annually, some every two or more years, and the frequency of others will depend on the child's age." The plaintiff then compares this statement with the recommendations of the Wisconsin EPSDT Professional Advisory Committee. The 1975 standards set by the Committee include six screenings from age one month to one year and 12 screenings thereafter.

The full definition given for the term periodic in the Manual states:

> *Periodic* means at intervals established for screening by medical, dental and other health care experts at appropriate periods of time to assure that disease or disability is not incipient or present. Some procedures should be done annually, some every two or more years, and the frequency of others will depend on the

child's age. Health experts in the State should be consulted for assistance in establishing periodicity.

The record indicates that the standards are set by the Committee after consultations with Wisconsin clinicians and the Wisconsin Chapter of the American Academy of Pediatrics. The plaintiff has pointed to only one screen which it feels is necessary to be conducted annually if the state plan is to be in conformity with the federal standards.

> Dental screening should be required as an annual procedure if it is to serve any preventive purpose and ensure prompt treatment of dental health problems which every child will have.

The plaintiff has failed, however, to support this conclusion with any evidence. The plaintiff bears the burden in this action as in any civil action and it cannot rely on its allegations. Nor does this Court feel that the defendants are required to establish by medical evidence why any screen set forth in the guidelines should not be incorporated in the Wisconsin screening package.

(2) Administration

 This aspect of the motion is based on an audit conducted by HEW of six Wisconsin counties in April of 1975. Conclusions drawn from that audit included a finding that the "State has failed to meet the requirements of 45 CFR 205.146(c). That subsection requires the State to:

> Take steps to assist recipients requesting screening services so that such recipients are able to receive them within a reasonable period normally not to exceed 60 days from the date of request.

A review of the report prepared by HEW indicates that the failure in this regard was comprised mainly in the failure to adequately document compliance. While such a finding may serve as an adequate base for an administrative finding of noncompliance, the Court is not at all convinced that it is sufficient for a judicial finding, especially on a motion for summary judgment. Nor is the Court persuaded at this juncture that the administrative findings are conclusive on the Court.

The Court finds that it need not address itself to these issues, however. As noted in the report itself and in the minutes of the May 23, 1975, EPSDT Regional Office-Wisconsin Meeting, the state was taking steps to correct the deficiencies noted by HEW. The record does not reflect whether these efforts were successful. It would appear to the Court, therefore, that the use of its discretionary equitable powers would be unwarranted on the present state of the record.

For the reasons stated above, the plaintiff's motion for summary judgment as to the content and administration of the screening program must be and hereby is DENIED.

D. Content and Administration of EPSDT Diagnosis and Treatment Program

 This aspect of the motion is directed exclusively to the dental treatment afforded under the Wisconsin EPSDT program.

Section 249.10(a)(3)(iv), 45 C.F.R. requires that the state EPSDT plan provide for "at least such dental care as is necessary for relief of pain and infection and for restoration of teeth and maintenance of dental health . . . whether or not or not otherwise included under the state plan, subject, however, to such utilization controls as may be imposed by the state agency." The Medical Assistance Manual details the guidelines as to dental treatment at 5–70–20 G.

The plaintiff attacks the Wisconsin plan on several grounds: (1) There is no requirement that the initial dental screening be performed by a legally qualified dental practitioner; (2) there is no requirement that children be screened annually; (3) those individuals who receive dental diagnostic evaluation are not assured of receiving appropriate corrective treatment; (4) there is no effective follow-up procedure to ensure that proper diagnosis and treatment promptly follows screening.

The guidelines at 5–70–20 E. 1. state that the initial screening process may be con-ducted by personnel other than practitioners. The guidelines do state that the "examination, diagnosis and treatment planning must be the responsibility of legally qualified dental practitioners and their auxiliary personnel." 5–70–20 F. 4. It appears from the record in this case that the Wisconsin plan so provides. The Handbook published by DHSS states that "Any child over two years of age should be referred to the dentist if he has not been there within the last 12 months, or if he does not have all of his primary (deciduous) teeth." The Court can find no evidence in the record to indicate that the examination, diagnosis and treatment of dental problems under the EPSDT plan in Wisconsin is being performed by nonqualified personnel. The regulations and guidelines do not require that the screening procedure be accomplished by such personnel.

Nor does the Court find that the fact that 34.9 percent of those screened in 1974 and 31 percent of those screened in 1975 were referred for diagnosis necessarily and conclusively establishes that the program is not effective. The plaintiff has not adequately supported its conclusionary position that "under Wisconsin EPSDT operations, most children are *not* receiving necessary dental diagnostic evaluation, and, consequently, appropriate treatment."

The argument concerning the frequency of screenings has been discussed above and needs no further treatment here. The argument concerning the record keeping activities on follow-up procedures has likewise been disposed of above.

The remaining contention is that those individuals who receive dental diagnostic evaluation are not assured of receiving appropriate corrective treatment. This argument is based on the Wisconsin Medical Assistance Program—Dentists' Handbook. The plaintiff argues that except for a specific list of dental treatments, all dental procedures are within the discretionary approval of the state dental consultant.

The state plan in Wisconsin requires that prior to providing dental treatments except

for a limited list of procedures, providers of dental care must obtain prior authorization from DHSS if they are to be reimbursed for the treatment. This prior authorization procedure is applicable to the EPSDT program. Nowhere in the Dentists' Handbook or in any other statement of policy submitted to the Court is there a stated procedure which allows the state dental consultant to ignore the federal statutes and regulations. The prior approval procedure allows the DHSS through the state consultant to make the determination of whether the treatment is within the regulations rather than the individual private provider. The Court cannot conclude from this that the state is not providing the full coverage required. The plaintiff has not documented even one instance when the state has refused treatment which is mandated by the EPSDT program.

The plaintiff argues that requiring written authorization to provide these services completely disrupts and frustrates the Congressional intent for the EPSDT program to serve as a preventive health program. This factual conclusion is, however, without evidentiary support.

For the reasons stated above, the plaintiff's motion for summary judgment as to the content and administration of the EPSDT diagnosis and treatment program must be and hereby is DENIED.

## IV. CONCLUSION

In view of the above disposition of the plaintiff's motion, the Court need not address itself to the issue of attorney's fees at this time.

The plaintiff's motion for summary judgment is in all respects DENIED.

SO ORDERED this 8th day of June, 1977, at Milwaukee, Wisconsin.