**Ollie SMITH, et al., Plaintiffs-Appellees,**

v.

**Jeffrey C. MILLER, Director, Illinois Department of Public Aid, Defendant-Appellant.**

No. 80–2029.

United States Court of Appeals, Seventh Circuit.

Argued March 31, 1981.

Decided Nov. 30, 1981.

Patrice Suberlak, Ill. Sp. Asst. Atty., Chicago, Ill., for defendant-appellant.

James D. Weill, Chicago, Ill., for plaintiffs-appellees.

Before FAIRCHILD, Senior Circuit Judge, and SPRECHER and WOOD, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

The Defendant in this class action, Jeffrey C. Miller, as Director of the Illinois Department of Public Aid ("Department"), appeals from the district court's order enjoining the Department from exceeding stipulated time limits in processing applications under Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.* (1976), for specialized medical and dental care. The district court, concluding that the Department's failure to promptly process applications for specific medical and dental services listed in the Department's regulations violated Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.* (1976), and the Department of Health, Education and Welfare's ("HEW")[1] regulations interpreting that Act, enjoined the Department from failing to process applications for special medical services within stipulated time limits and also ordered that those applications for specialized care not granted or denied within the time limits be automatically approved. The Department appeals only from that portion of the order deeming applications for care untimely processed automatically approved. We affirm.

## I.

Participating states within the Medicaid system receive large federal contributions to reimburse providers of medical and den-

1. Pursuant to a 1979 amendment, the Department of Health, Education, and Welfare was redesignated as the Department of Health and Human Services. For purposes of consistency, this opinion refers to the agency under its former name.

tal care to indigent families with children and to blind, disabled, or elderly individuals, 42 U.S.C. § 1396 (1976). While the states retain much discretion in the administration of the program, it is well established that in return for these substantial federal contributions, they must adhere to the dictates of Congress in the operation of the program under Title XIX and to HEW's requirements and regulations interpreting the Act. *King v. Smith*, 392 U.S. 309, 317, 88 S.Ct. 2128, 2133, 20 L.Ed.2d 1118 (1968).

As part of its administrative scheme, the Department requires its prior approval for a wide variety of medical and dental treatments before compensating medical care providers for their services. Without this consent, the Department refuses to reimburse the providers, regardless of whether the need eventually can be substantiated. Consequently, for a long list of medical care treatments—orthopedic shoes, artificial limbs, oxygen, and prescription drugs, to name a few—the Department's approval precedes the provision of important health care services to Medicaid recipients.

The plaintiffs in this action represent the class of all individuals whose past or pending requests for medical or dental services require the Department's review and approval before care is given under Title XIX.

While the plaintiffs did not contest the Department's prerogative to maintain a prior approval system or the validity of the regulation itself, they challenged the Department's administration of its system. Specifically, they alleged that the Department has not processed requests for special medical care promptly enough to satisfy the requirements of Title XIX and the HEW regulations interpreting the Act.[2] The plaintiffs sought, *inter alia*, in their complaint injunctive relief establishing fixed time limits to ensure the Department's prompt processing of requests for specialized medical care. The district court granted the plaintiffs' motion for summary judgment on the issue, finding the Department's failure to set specific time standards violated both 42 U.S.C. § 1396a(a)(8) (1976) and HEW regulation 42 C.F.R. § 435.930(a). In negotiation over the length of the time limits, the parties then arrived at a compromise draft of the permanent injunction. The district court's final order adopted the parties' stipulated time limits and imposed those limits upon the Department for governing its disposition of prior approval requests. Those limits ranged from ten to thirty days, depending upon the type of medical care requested. The district court also ordered that all requests neither granted nor denied within the time limits be automatically approved. Fashioning this portion of the order, the district court adopted a suggestion from HEW's Medical Assistance Manual. That manual provides in pertinent part:

> In order to assure timely disposition of requests for prior authorization, the system should provide that requests which have not been acted on within a specified time are automatically approved.

HEW, Medical Assistance Manual, § 5–30–20C.

The Department now appeals from the district court's decision deeming all requests for medical care untimely processed under the Department's prior approval procedures automatically approved.

## II.

It is uncontested that the district court possessed the equitable power to enjoin the Department's violation of federal

---

2. The plaintiffs alleged in their complaint and the district court later found that the defendant's administration of the prior approval regulations violated 42 U.S.C. § 1396a(a)(8) and 42 C.F.R. § 435.930(a). In pertinent part those sections read:

42 U.S.C. § 1396a(a)(8):

A State plan for medical assistance must—
  (8) provide that all individuals wishing to make application for medical assistance un-

der the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals . . . .

42 C.F.R. § 435.930(a):

The agency must—
(a) Furnish Medicaid promptly to recipients without any delay caused by the agency's administrative procedures.

laws and regulations. While a state's participation in the Medicaid program is purely voluntary and its acceptance of substantial federal funds uncoerced, once electing to participate, it must fully comply with federal statutes and regulations in its administration of the program. *Townsend v. Swank*, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971); *King v. Smith*, 392 U.S. at 317, 88 S.Ct. at 2133; *Areizaga v. Quern*, 590 F.2d 226, 227 (7th Cir. 1978); *Stanton v. Bond*, 504 F.2d 1246, 1247 (7th Cir. 1974), *cert. denied*, 420 U.S. 984, 95 S.Ct. 1415, 43 L.Ed.2d 666 (1975). Injunctive relief may, of course, be applied to state officials whose actions derogate federal Medicaid laws and regulations; *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1905). Congress intended that the "full panoply" of judicial remedies be available to courts considering in 42 U.S.C. § 1983 actions a state's compliance with the Social Security Act. *Edelman v. Jordan*, 415 U.S. 651, 691, 94 S.Ct. 1347, 1369, 39 L.Ed.2d 662 (Marshall, J., dissenting). As the Department points to no explicit provision within the Act and no ground in the Constitution which restricts the district court's authority to award equitable relief, the district court had authority to exercise its full powers of equity to effectuate the purposes of the Act. *Edelman v. Jordan*, 415 U.S. at 673 n.15, 94 S.Ct. at 1360 n.15; *Mitchell v. DeMario Jewelry*, 361 U.S. 288, 292, 80 S.Ct. 332, 335, 4 L.Ed.2d 323 (1960).

Without contesting the district court's authority to fashion an equitable remedy, the Department first argues that the district court, exercising its equitable powers, may not anticipate a party's failure to observe its order and thus prematurely provide for that lapse in the order for permanent relief. We disagree.

Many courts have exercised equitable powers to force a state to make or continue making public relief payments until the state's administration of its public aid program comports with federal statutory or constitutional standards. In *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the United States Supreme Court affirmed the district court's order foreclosing the administrator of New York's AFDC program from terminating welfare benefits before beneficiaries were given notice and an opportunity for a fair hearing. In *Eder v. Beal*, 609 F.2d 695 (3rd Cir. 1979), the Third Circuit affirmed a district court's order enjoining the state of Pennsylvania from terminating its eyeglass program, a discretionary program under the Medicaid laws, until it complied with the notice requirements specified in HEW's regulations. *See, e. g., Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); *Rosado v. Wyman*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). Thus, the district court may anticipate in its permanent order for relief the state's possible failure to comply with its order. It may order the state to make Medicaid payments against its will until the administration of its Medicaid program fits the federal statutory requirements or until the state elects to forfeit the matching federal funds to which it is entitled. We believe that, by ordering all applications not decided within the stipulated time limits be automatically approved, the district court did no more.

### III.

While it is certain that the district court need not presume that the state will adhere to both the letter and spirit of its order, it remains to be seen whether the district court's failure to adopt such a presumption under the immediate circumstances amounts to an abuse of discretion in light of our decision in *Wright v. Califano*, 587 F.2d 345 (7th Cir. 1978).[3] In *Wright*, we held

---

**3.** The Department also places great weight upon this court's decision in *Rodriguez v. Swank*, 496 F.2d 1110 (7th Cir.), *cert. denied*, 419 U.S. 885, 95 S.Ct. 151, 42 L.Ed.2d 125 (1974), to bolster its position that automatic approval is an impermissible remedy in Medicaid cases. We do not read *Rodriguez* to hold that a district court abuses its discretion either by requiring automatic approval as a remedy altogether or by ordering automatic approval of requests not timely processed before it becomes fully apparent that the Department will fail to comply with its order. In *Rodriguez* this court merely held that the district court in a

that the district court abused its discretion by ordering that all applications for participation in the federal Social Security program not timely processed by HEW be automatically approved. The district court in *Wright* imposed time deadlines upon HEW to ensure its prompt processing of applications for old age and survivor's benefits from claimant's who had never before participated in the program. It further ordered that recipients whose requests were not timely processed were presumed eligible and entitled to payments until the agency expressly found that they no longer qualified for benefits. A careful examination of the circumstances underlying this appeal shows that the situation presented in *Wright* is not again before us.

The Department's concerns in protecting the public fisc differ starkly from HEW's concerns which we found decisive in *Wright*. There, the processed application was the *initial* determination of a recipient's eligibility for old age and survivor's benefits under the Social Security Act. The Department's prior approval requirement, in contrast, operates only after officials have made an initial determination that the applicant meets Medicaid eligibility criteria. The applicant, more likely than not, has been receiving general benefits for a substantial period of time and only requests additional benefits because a special need has arisen. Here, it is also significant that the Department's approval follows a Medicaid provider's, usually a medical doctor for health services or a dentist for oral care, preliminary determination that the treatment is medically essential. In most instances, the provider, not the applicant, applies to the Department for approval to provide the service, and the Department refuses to pay for any health or dental services, whether they eventually prove to be medically necessary or not, which was not first authorized under the Department's prior approval procedures.

The record indicates that since the district court's order has been in effect, 93 per cent of all applications for specialized medical care requiring prior approval under Department's regulations have eventually been approved. The automatic approval order from which the Department now appeals can therefore affect no more than seven per cent of all applications for specialized medical care which the Department receives.[4] The applicant's eligibility for general Medicaid benefits is beyond dispute, and his special needs are already supported by the opinion of a Medicaid provider whose treatment and prescription practices are open to Department review. Thus, that the department runs a small risk of loss to provider fraud and recipient deceit is readily apparent from accumulated statistics and Department procedures.

█ In *Wright*, we recognized a state's well established discretion to set a standard of need and to determine initial eligibility criteria for its public assistance programs. *See Rosado v. Wyman*, 397 U.S. at 408, 90 S.Ct. at 1215 (1970). That the judiciary should not interfere with the exercise of this discretion absent a due process violation is manifest from our decision in *Wright*. *Wright v. Califano*, 587 F.2d at 352. However, the harm of automatic approval most often lies not in the use of the remedy itself but in the intolerable burdens imposed upon social service agencies. Close examination of the record and careful ref-

---

civil contempt proceeding did not abuse its discretion by ordering the Illinois Department of Public Aid to pay retroactive benefits plus $100 for each instance of delay in processing AFDC applications rather than ordering the automatic approval of those applications. At its broadest, *Rodriguez* can be read only to hold that resort to automatic approval is discretionary in the district court and that a district court's election of alternate remedies is not an abuse of discretion.

4. We note parenthetically that this statistic does not separate those requests which would have been approved regardless of the automatic approval order from those approved only because of the order's prophylactic effect. While we note this discrepancy with interest, it is nonetheless immaterial to our considerations here. The fact remains that the maximum burden placed upon the Department is that seven percent of the applications received are approved without its scrutiny and paid without its acquiescence.

erence to HEW's Medical Assistance Manual convince us that automatic approval did not unduly burden the Department and is not, in this instance, an impermissible remedy to ensure a state Medicaid agency's compliance with Title XIX in the administration of its prior approval system.

While the possibility of the loss of benefits to fraud or waste diminish substantially when compared with the same concerns voiced in *Wright*, the injury to beneficiaries denied the timely receipt of medical care remains much the same. This is not a case where the payment of retroactive benefits is fully remedial for the delays which the beneficiary is forced to undergo. *Goldberg v. Kelly*, 397 U.S. at 264, 90 S.Ct. at 1018; *Wright v. Califano*, 587 F.2d at 351. Although the Department's prior approval requirement does not apply to emergency procedures, delay beyond the time limits may nevertheless impose lingering, if not irreversible, hardships upon recipients.[5]

The problem is further complicated because it is difficult if not impossible, for the district court to fashion a remedy which both compensates recipients for losses suffered from administration delays and guarantees that the agency will substantially comply with the statutory requirements, and which does not demand from the district court constant supervision over the situation in order to effectuate these two fundamental purposes.

The Department offers no effective alternative. It makes no more than a cryptic suggestion that equity requires the district court to examine the Department's failures to comply with its order individually, on a case by case, fact by fact basis. Moreover, the thrust of the department's alternative is not immediately obvious. If the Department means to suggest that those Medicaid statutes, vesting substantial administrative discretion in participating states, prohibit automatic approval and require the district court instead to evaluate the merits of each application for special medical treatment, it is difficult to comprehend how the suggestion vests any more discretion in the Department than the district court's automatic approval method. If, on the other hand, the Department suggests only that the district court determine whether the Department had failed to observe the stipulated time limits, its suggestion amounts to no more than an exercise in futility for the district court. It not only requires the continual monitoring of a state's administration of its Medicaid program discouraged in *Rosado v. Wyman*, 397 U.S. at 422, 90 S.Ct. at 1222 and *Wright v. Califano*, 587 F.2d at 353–54, but it also leaves the district court little recourse but to again order the Department to act promptly on the applicant's request and hope that the Department elects this second time to comply with its order.[6]

5. Allegations set forth in the plaintiffs' complaint and accompanying affidavits represent several of the more egregious consequences which followed the Department's unwarranted delays. One plaintiff, denied dental care, found it painful to chew solid food and, at times, even to speak. Another plaintiff's three year old child, suffering from a leg deformity, frequently fell down and walked only with pain, while the Department delayed in processing her request for orthopedic shoes. While the impact upon recipients is but one factor for a court's consideration in fashioning a remedy to deal with administrative delay in processing Medicaid applications, *Wright v. Califano*, 587 F.2d at 351, unwarranted agency delay is nevertheless "deplorable" for the hardships it imposes upon those dependent upon the agency's actions. *NLRB v. Rutter-Rex Mfg. Co.*, 396 U.S. 258, 265, 90 S.Ct. 417, 421, 24 L.Ed.2d 405 (1969); *see generally*, Ogden, *Judicial Control of Ad-*

*ministrative Delay*, 3 U.Day.L.Rev. 345 (1978); Goldman, *Administrative Delay and Judicial Relief*, 66 Mich.L.Rev. 1423 (1968).

6. Theoretically, in addition to automatic approval and case by case monitoring of the Department's compliance with its order, the district court also had the option to enjoin the use of federal funds in the Department's prior approval procedures, *Rosado v. Wyman*, 397 U.S. at 420, 90 S.Ct. at 1221, or to enjoin the operation of the prior approval system entirely until the Department proved its ability to meet the stipulated time limits and comply with the Act. *Rosado v. Wyman*, 397 U.S. at 420–21, 90 S.Ct. at 1221–22; *Dodson v. Parham*, 427 F.Supp. 97, 109 (N.D.Ga.1977). These are drastic alternatives in a situation like the present, where the Department has failed to meet federal standards in processing only a small percentage of applications in one isolated segment of the to-

Under either interpretation, the Department's suggestion works only to exacerbate the recipient's plight. It imposes another layer of hearings and delay upon a class of unsophisticated litigants whose right to the prompt disposition of their claims is already settled and undisputed. Requiring those litigants to reenter the courtroom for the district court's ministerial determination that the Department has failed to observe the time limits serves no purpose. Moreover, under these circumstances the proposal may actually be detrimental. As it leaves the recipient in no better position than if the Department had initially elected to comply with the order, the proposal strips the deadlines of much of their impact and the agency of most of its incentive to comply with the order. We cannot hold under those circumstances the district court abused its discretion by refusing to adopt the Department's alternative.

### IV.

Since a state's wide discretion in administering its Medicaid program is qualified by its mandate to adhere to federal statutes and HEW regulations, *King v. Smith*, 392 U.S. at 317, 88 S.Ct. at 2133, *Stanton v. Bond*, 504 F.2d at 1247, the Department's final argument requires little attention. The Department argues that the automatic approval portion of the district court's order limits its discretion over the administration of its Medicaid program. Congress has provided the states with substantial discretion to set the level of benefits and to formulate eligibility criteria in their administration of the Medicaid program. *Rosado v. Wyman*, 397 U.S. at 408, 90 S.Ct. at 1215. The district court's order requiring automatic approval does not abrogate the Department's exercise of its discretion. The Department is free to award or deny any level of benefits it chooses as long as it does so within the strictures of the Social Security Act. As stated, the time limits enforced by the district court's automatic approval order were a compromise between the parties.

Although different limits apply to different medical procedures and treatments, the limits in total represent the Department's belief that the deadlines imposed can be met and its discretion adequately exercised within the stipulated time limits. Significantly, the Department rejected the plaintiff's initial proposals because the deadlines were something it could not live with. It can hardly be argued now that the Department's inability to process a small percentage of those requests within the stipulated time limits strips it of all discretion to consider the merits of those requests. The Department may, by complying with the stipulated time limits, reserve to itself full discretion to consider the merits of each request, and reduce the small percentage of automatic approvals to zero.

█ Although the Department has substantial discretion to set the level and monitor the distribution of benefits, its discretion does not include the prerogative to process applications for those benefits at its leisure—at least where federal statute and HEW regulations require that those applications be processed with "reasonable promptness." 42 U.S.C. § 1396a(a)(8) (1976). "[O]n occasion the courts must act to make certain that what can be done is done. Agency inaction can be as harmful as wrong action. The Commission cannot, by its delay, substantially nullify rights which the Act confers, though it preserves them in form." *American Broadcasting Co. v. FCC*, 191 F.2d 492, 501 (D.C.Cir.1951). In short, a state's discretion in administering its Medicaid program does not shelter it from judicial action on those occasions where it has transgressed the strictures of the Social Security Act. As the automatic approval portion of the order operates only after the agency has first transgressed the requirements of the Social Security Act, we believe that the automatic approval order does no more than insure that the Department adheres to the strictures of the Act and reme-

---

tal program. It is not, of course, for our consideration whether the district court would abuse its discretion in a situation like the

present by imposing either one of these remedies upon the Department.

dy those occasions where it does not. We do not believe that the district court inappropriately invaded the boundaries of the Department's discretion to administer its Medicaid program.

## V.

In this age of budgetary pressures, declining manpower rolls, and rising benefit requests, any time a district court places the burden of automatic approval upon an administrative agency, it is a matter of grave concern. *See Wright v. Califano*, 587 F.2d at 354. However, as HEW, an agency congressionally charged with evaluating a state agency's ability to effectively process Medicaid claims, recommends that automatic approval be used as a remedy to control state administrative delay, that judgment is entitled to considerable weight. HEW, Medical Assistance Manual, § 5–30–20C.[7] Writing in the welfare setting, Justice Marshall stated: "We should not lightly disregard this explicit recognition by the agency charged with administration of the statute that such a remedy was authorized by Congress." *Edelman v. Jordan*, 415 U.S. at 693, 94 S.Ct. at 1370 (1973) (Marshall, J., dissenting).

We hold that far from abusing its discretion, the district court reached a prudent compromise between two conflicting concerns in this nettlesome area of federal-state welfare administration. The Supreme Court explained this dilemma in *Rosado v. Wyman*:

In conclusion, we add simply this. While we view with concern the escalating involvement of federal courts in this highly complicated area of welfare benefits, one that should be formally placed under the supervision of HEW, at least in the first instance, we find not the slightest indication that Congress meant to deprive federal courts of their traditional jurisdiction to hear and decide federal questions in this field. It is, of course, no part of the business of this Court to eval-

---

**7.** The Department argues that the district court improperly relied upon HEW Medical Assistance Manual § 5–30–20C as a legislative rule not promulgated by the agency in conformity with Section 553 of the Administrative Procedure Act, 5 U.S.C. § 553. It is clear that whether an administrative agency's pronouncement is a legislative rule binding upon the courts or an interpretive rule which the courts are free to disregard after giving it the weight appropriate to the agency's experience and expertise is a matter of the agency's intention in formulating the rule. *Joseph v. United States Civil Service Comm'n.*, 554 F.2d 1140, 1153 n.24 (D.C.Cir. 1977).

It is clear from the preface to the Medical Assistance Manual that HEW intended the manual only as an interpretive rule. The introduction to the Medical Assistance Manual specifies:

I. *Purpose*

The purpose of this Manual is to assist States in implementing SRS Program Regulations pertaining to the administration of medical assistance. It is an official medium by which the Medical Services Administration issues guides and procedures to States for the operation of certain aspects of the medical assistance program under the Social Security Act, as amended, and related legislation.

II. *Content*

This Manual clarifies, explains, and expands upon the meaning of the Regulations and the provisions upon which they are based. It may include ... clarification as to mandato-ry, prohibited, or permissive provisions; ... interpretation in relation to problems that arise in working with the regulations; and other related material such as the Federal percentages.

HEW, Medical Assistance Manual, 1.

Furthermore,. it is equally clear that the district court utilized the manual only for guidance in fashioning its order for automatic approval. In its memorandum opinion, the district court wrote:

Defendant contends that inasmuch as the Manual has not been published in the Federal Register, it is not binding on the states. *See Wisconsin Welfare Rts Org'n v. Newgent*, 433 F.Supp. 204, 213 (E.D.Wis.1977).... In any event, the court in *Newgent* noted:

"While the court is of the opinion that the Medical Assistance Manual does not have the force and effect of law, it does feel that the guidelines and recommended standards can be utilized in determining whether the defendants are in 'substantial compliance with the applicable statutes and regulations.'" 433 F.Supp. at 214.

The court will therefore rely on the Manual for that purpose throughout this opinion. *Smith v. Trainor*, No. 76 C 526, mem. dec. at 4 n.7 (N.D.Ill.1979). We believe that the district court gave HEW's experience, expertise, and judgment in the state's administration of its Medicaid program no more deference than it was due.

uate, apart from federal constitutional or statutory challenge, the merits or wisdom of any welfare programs, whether state or federal, in the large or in the particular. It is, on the other hand, peculiarly part of the duty of this tribunal, no less in the welfare field than in other areas of the law, to resolve disputes as to whether federal funds allocated to the States are being expended in consonance with the conditions that Congress has attached to their use.

397 U.S. at 422–23, 90 S.Ct. at 1222–23 (footnote omitted).

Thus, in deferring to HEW's considerable experience in the supervision of state Medicaid agencies, the district court succeeded in both enforcing an important federal right and avoiding obvious difficulties with continually monitoring the Department's compliance with its order. It is true today, just as it was when we decided *Wright*, that:

> [I]t would be the extremely rare case where a Court would be justified in holding ... that the passage of time and *nothing more* presents an occasion for the peremptory intervention of an outside Court in the conduct of an agency's adjudicative proceedings.

*Wright v. Califano*, 587 F.2d at 352 (quoting *FTC v. Weingarten*, 336 F.2d 687, 691–92 (5th Cir. 1964), *cert. denied*, 380 U.S. 908, 85 S.Ct. 890, 13 L.Ed.2d 796 (1965) (emphasis added); thus we conclude that the district court's reliance upon HEW's Medical Assistance Manual well justified the automatic approval provision in the district court's order.[8]

As the district court possesses considerable discretion to formulate an equitable remedy which fully protects a recipient's rights under Title XIX, we believe, for the foregoing reasons, that the district court did not abuse its discretion by ordering that all requests for Medicaid benefits not timely processed under the Department's prior approval procedures be automatically approved. Costs to appellees.

AFFIRMED.

---

8. The Department's additional argument that the automatic approval order creates an arbitrary distinction between Medicaid recipients whose applications are considered and approved under the Department's prior approval procedures and recipients whose requests are not promptly considered and thus approved by default is meritless.