Bluford MULLINS & Fannie
Ratliff, Plaintiffs,

v.

James KENLEY, Commissioner, William
L. Lukhard, Commissioner Virginia
Dept. of Social Services, Defendants.

Civ. A. No. 85–0014–A.

United States District Court,
W.D. Virginia,
Abingdon Division.

July 17, 1986.

Martin Wegbreit, Castlewood, Va., for plaintiffs.

Roger L. Chaffe, Julia Krebs-Markrich, Asst. Attys. Gen., Richmond, Va., for defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

The plaintiffs, Bluford Mullins and Fannie Ratliff, filed claims for Medicaid benefits on May 4, 1984 and April 17, 1984, respectively. These claims were denied. Plaintiffs now maintain that certain of the policies and procedures adopted by the State of Virginia for adjudication of such claims are in violation of the United States Constitution, as well as various federal statutes and regulations. In a complaint filed on January 7, 1985, plaintiffs seek declaratory and injunctive relief. Jurisdiction of this court is asserted pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3). The case is now before the court on cross motions for summary judgment.

## DESCRIPTION OF THE PROGRAM

Medicaid is a jointly funded federal-state program administered pursuant to Title XIX of the Social Security Act, 42 U.S.C. § 1396, *et seq.* Stated succinctly, the primary purpose of the program is to provide medical assistance to indigent families with children, and to blind, disabled, or elderly individuals. Participating states administer the program pursuant to 42 U.S.C. § 1396a. While these states retain some discretion in the administration of the program, it is well settled that because of the substantial financial contribution of the federal government, the states must adhere to certain federal requirements in their implementation of the program objectives. *King v. Smith,* 392 U.S. 309, 317, 88 S.Ct. 2128, 2133, 20 L.Ed.2d 1118 (1968); *Smith v. Miller,* 665 F.2d 172 (7th Cir. 1981).

Pursuant to the governing statutory and regulatory framework, there are two general categories of individuals who are eligible for Medicaid benefits. All participating states are required to provide benefits to "categorically needy" persons. The "cate-

gorically needy" include all those persons receiving federal aid through such programs as Supplemental Security Income (SSI) and Aid to Families with Dependent Children (AFDC). *See, gen.,* 42 U.S.C. § 1396a(a)(10)(A)(i). The second category encompasses two subcategories: (1) "optional categorically needy," which includes those persons who meet certain of the eligibility requirements for SSI or AFDC benefits, but who do not receive those benefits (*See* 42 C.F.R. § 435.200 *et seq.*) and (2) "medically needy," which includes persons who meet certain medical and financial standards, but who are not otherwise "categorically" eligible (*See* 42 C.F.R. § 435.-300 *et seq.*).

The State of Virginia participates in the Medicaid Program. Under the Virginia program, benefits are extended to the "categorically needy" and the "medically needy." In determining eligibility for Medicaid benefits on the basis of disability, Virginia has chosen to use the same definition of disability as that employed in the adjudication of claims for SSI benefits under Title XVI of the Social Security Act. Indeed, in those instances in which a claimant has filed a claim for SSI benefits, Virginia generally adopts the Social Security Administration's decision as to disability in determining the claimant's eligibility for Medicaid benefits. However, Virginia must undertake an independent determination as to the claimant's disability in those cases in which the Social Security Administration denies or terminates SSI benefits on the basis of eligibility requirements unrelated to the claimant's capacity for work, e.g., excess income or resources.[1]

Under the Virginia procedure, a Medicaid claimant first files application for benefits with the Medicaid Disability Unit of his local Department of Social Services (DSS).[2] If the claim is denied at this level, a claimant may request a hearing before a Hearing Officer employed by the Virginia Department of Medical Assistance Services (DMAS).[3] After the hearing, the Hearing Officer prepares a report, setting forth findings of fact, conclusions of law, and recommended disposition. The report is forwarded to the DMAS Appeals Board, which makes the final administrative decision on eligibility issues.

SUMMARY OF THE FACTS

Both plaintiffs are former recipients of SSI benefits. Each of the plaintiffs eventually became ineligible for SSI benefits due to increases in income which placed their total income slightly above that permitted under the SSI Program. In Mr. Mullins' case, the receipt of federal black lung benefits resulted in the termination of his SSI benefits. In Mrs. Ratliff's case, her husband's receipt of black lung benefits necessitated termination of SSI benefits. During the period in which they were entitled to SSI benefits, both plaintiffs were also eligible for Medicaid coverage as "categorically needy" persons.

After the termination of their SSI benefits, both plaintiffs filed application for Medicaid benefits with their local DSS office. Both plaintiffs claimed entitlement to Medicaid benefits as category-related "medically needy" persons who meet the SSI requirement of disability. Both applications were denied at the DSS level. In each case, the appropriate Medical Disabili-

---

1. Independent determinations as to disability are also necessary in other circumstances which are not relevant to the instant case.

2. The defendant William L. Lukhard is the Commissioner of the Virginia Department of Social Services and is responsible for administering that portion of the Virginia Medicaid Program pertaining to initial determinations of eligibility.

3. At the time plaintiffs' complaint was filed, the Virginia Medical Assistance Program was ad-

ministered by the State Department of Health. Consequently, the plaintiffs originally named James Kenley, Commissioner of the Virginia Department of Health, as a party defendant. Effective March 1, 1985, the administration of the program was transferred to the Department of Medical Assistance Services. *See* Va.Code § 32.1–325 (1985 Repl.Vol.). Therefore, plaintiffs' complaint as to defendant Kenley is technically moot.

ty Unit determined that the claimant was not disabled. Upon the denial of their claims, each plaintiff requested a hearing before a Hearing Officer of the DMAS. After the hearing in Mrs. Ratliff's case, the Hearing Officer recommended that the Appeals Board sustain the agency's denial of Medicaid benefits. However, in Mr. Mullins' case, the Hearing Officer recommended that the Appeals Board overturn the agency's action and award benefits. Nevertheless, in both Mr. Mullins' case and Mrs. Ratliff's case, the Appeals Board ultimately upheld the agency action and denied entitlement to Medicaid benefits on the basis of a finding of no disability.

### PLAINTIFFS' ALLEGATIONS

In their complaint, the plaintiffs allege that the standards, policies, and procedures which were employed in the denial of their Medicaid claims were in violation of various federal statutes, regulations, and constitutionally protected rights. Plaintiffs have cited six separate arguments in support of their contentions. In the court's view, plaintiff's arguments are best treated as falling in two separate categories.

Plaintiffs' first argument is that the Virginia hearing procedure is insufficient, both in terms of the enabling legislation as well as under established constitutional principle. Plaintiffs argue that this insufficiency arises from the fact that the ultimate decision on a Medicaid application is made by the Appeals Board rather than by the Hearing Officer, who has had the op-portunity to meet with the claimant on a personal basis and conduct a first-hand examination of witnesses and medical resource persons. Citing 42 C.R.F. § 431.205, which explicitly incorporates the due process requirements of *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), plaintiffs argue that the Virginia procedure isolates and restricts the decision makers to such an extent as to contravene federal law.

Plaintiffs' remaining allegations all deal with the manner in which the appropriate Virginia officials evaluate the issue of disability for purposes of Medicaid entitlement. More precisely, plaintiffs' allegations concern what they perceive as the unacceptable disparity between the Social Security Administration's interpretation and implementation of the disability standard and the Virginia DMAS's interpretation and implementation of that same standard.

As previously noted, Virginia has chosen to use the same definition of disability in consideration of claims for Medicaid as that employed by the Social Security Administration in the adjudication of SSI claims.[4] *See, gen.,* 42 C.F.R. § 435.540. This choice proves to be quite expedient and attractive in those cases in which Virginia simply defers to decisions of the Social Security Administration. The difficulty arises in those instances in which the Virginia DMAS is called upon to make an independent determination. It must be remembered that both plaintiffs were considered

---

**4.** For purposes of adjudication of SSI claims under Title XVI, 42 U.S.C. § 1382c(a)(3) provides as follows:

(A) An individual shall be considered to be disabled for purposes of this subchapter if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months (or, in the case of a child under the age of 18, if he suffers from any medically determinable physical or mental impairment of comparable severity).

(B) For purposes of subparagraph (A), an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

disabled for SSI purposes for a period of time prior to the filing of their Medicaid claims, and that their SSI benefits were terminated not because of any change in their respective medical statuses but rather because of increased income. It is understandably difficult for plaintiffs to accept the fact that the Virginia DMAS, using exactly the same disability standard, has now determined that they are not disabled.

In addition to this general conceptual problem and its attendant constitutional implications, plaintiffs argue that the adjudication of their specific Medicaid claims violated federal law and regulatory standards in five different respects:

(1) Mr. Mullins maintains that the Virginia DMAS Appeals Board ultimately concluded that his pneumoconiosis or "black lung" is not so severe as to render him disabled. Citing *Evans v. Heckler*, 734 F.2d 1012 (4th Cir.1984), Mr. Mullins argues that under the decisional law relative to disability insurance and SSI claims, pneumoconiosis is generally recognized as a severe impairment. Thus, Mullins contends that the Appeals Board's rationale for denial of his Medicaid claim was in violation of federal law.

(2) In a similar vein, Mrs. Ratliff points out that she experiences an I.Q. under 80, and that pursuant to Social Security Ruling 82–55, an I.Q. below 80 is always considered to be a severe impairment for purposes of claims adjudication. Since the Appeals Board ultimately concluded that Mrs. Ratliff does not suffer from a severe impairment, she also argues that the denial of her claim was in violation of federal law.

(3) Both plaintiffs urge that the prior adjudication of their entitlement (and disability) under the SSI program should have served to create a presumption of continuing disability for purposes of the Medicaid adjudication. In support of this assertion, plaintiffs cite *Dotson v. Schweiker*, 719 F.2d 80 (4th Cir.1983) and 42 U.S.C. § 1382c(a)(5), as amended, for the proposition that a previous determination of disability under social security law serves to create a presumption that the disability is

continuing. Inasmuch as no presumption of continuing disability was explicitly applied in either of their cases, plaintiffs allege that the denial of their Medicaid claims was inconsistent with federal law.

(4) Both plaintiffs maintain that the Appeals Board failed to consider the combined impact of their respective impairments in determining that they are not disabled. Plaintiffs note that under federal law, it is well established that the combination of a claimant's impairments must be considered in a social security disability adjudication. *See, e.g., Oppenheim v. Finch*, 495 F.2d 396, 398 (4th Cir.1974); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir.1968). This longstanding principle of social security decisional law has now been adopted by Congress. *See* 42 U.S.C. § 1382c(a)(3)(G), as amended. Plaintiffs maintain that the Appeals Board's failure to consider combined impairments was in violation of federal law attending to the adjudication of SSI claims.

(5) Finally, both plaintiffs allege that certain of their physical conditions were discounted by the Appeals Board because those conditions have not resulted in end organ damage. Plaintiffs urge that under federal law, such end organ damage is not necessary in order for a medical problem to be considered as constituting or contributing to an overall disabling impairment. *See, e.g., Martin v. Secretary*, 492 F.2d 905, 909 (4th Cir.1974). Thus, plaintiffs contend that the Appeals Board ignored this key element of federal law in denying their claims.

In summary, in addition to their due process argument under *Goldberg v. Kelly, supra*, plaintiffs assert that the DMAS has ignored a variety of key features of federal law which serve to interpret and amplify the definition of disability common to both the Medicaid and SSI programs. Plaintiffs seek injunctive relief structured so as to prevent such alleged shortcomings by DMAS in the future. Based on their particular medical circumstances, plaintiffs also seek a judicial declaration as to their Medicaid eligibility and a permanent injunc-

tion prohibiting the denial of their Medicaid claims on the basis of nondisability.

### RULING OF THE COURT

After consideration of the memoranda and arguments submitted by the parties, the court is constrained to conclude that summary judgment must be entered in favor of the defendants. The court understands plaintiffs' frustration as to the outcome of their particular cases. Furthermore, the court shares plaintiffs' concern as to the Appeals Board's failure in its opinion to offer any more explicit reasons in support of its final decision. Nevertheless, the court is of the opinion that the circumstances of this case do not justify judicial intervention in the Virginia Medicaid adjudicatory process.

### A.

The court finds that plaintiffs' due process claim under *Goldberg v. Kelly, supra* has no merit. *Goldberg* dealt with the question of whether public welfare recipients are entitled to a hearing prior to the termination of welfare benefits. In holding that procedural due process protection is applicable and that a pretermination hearing is constitutionally mandated, Justice Brennan emphasized the interest and importance of the continuation of benefits to the individual citizen:

> The same governmental interests that counsel the provision of welfare, counsel as well its uninterrupted provision to those eligible to receive it; pre-termination hearings are indispensable to that end.

397 U.S. at 265, 90 S.Ct. at 1019.

Under 42 C.F.R. § 431.205, the following requirements are established for the state Medicaid hearing system:

(a) The Medicaid agency must be responsible for maintaining a hearing system that meets the requirements of this subpart.

(b) The State's hearing system must provide for—
(1) A hearing before the agency; or
(2) An evidentiary hearing at the local level, with a right of appeal to a State agency hearing.
(c) The agency may offer local hearings in some political subdivisions and not in others.
(d) The hearing system must meet the due process standards set forth in *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), and any additional standards specified in this subpart.

Plaintiffs read *Goldberg* so as to require that every Medicaid claimant be accorded a face-to-face meeting with the actual decision maker before denial of the claim.

 It is true that the Supreme Court expressed the concern in *Goldberg* that the recipient should have the opportunity to present evidence, offer testimony, and cross-examine adverse witnesses before the economically impacting decision is made. 397 U.S. at 268, 90 S.Ct. at 1020. It is also true that the Court observed that written submissions are not a sufficient substitute for a hearing, especially in cases in which credibility and veracity are at issue. *Id.* at 269, 90 S.Ct. at 1021. However, as long as all these traditional hearing elements are satisfied, the court is unable to perceive any language in *Goldberg* which prohibits the delegation of the responsibility for conduct of the hearing to an officer subordinate to the ultimate decision maker.

 Assuming that all the evidence upon which the final decision is to be based is adduced and considered at the evidentiary hearing, "it is perfectly acceptable for the hearing officer to make a *recommendation* to his or her superior who is the ultimate authority." *Featherston v. Stanton,* 626 F.2d 591, 596, n 4 (7th Cir.1980) (emphasis in original). Indeed, such a procedure is seemingly contemplated by the governing regulations.[5] Similar procedures are commonly employed in other ad-

---

**5.** 42 C.F.R. § 431.244 provides as follows:
*Hearing Decisions*

(a) Hearing recommendations or decisions must be based exclusively on evidence introduced at the hearing.

ministrative contexts. For example, under federal social security regulatory procedure, once a case is remanded by a federal court for additional proceedings, the matter is generally referred by the Social Security Administration's Appeals Council to an Administrative Law Judge for a *de novo* hearing and *recommended decision. See* 20 C.F.R. § 404.983. Although the Appeals Council does not conduct its own evidentiary hearings, its action on the Law Judge's recommendation constitutes the final administrative decision. *See* 20 C.F.R. § 404.-979. There is no reason to believe that such a procedure contravenes due process.

The simple fact is that *Goldberg v. Kelly, supra* does not concern the proposition for which it is now advanced. The emphases in *Goldberg* were the timing and substance of the termination hearings. In the instant case, there is no allegation that either plaintiff was denied the opportunity to participate at an evidentiary hearing, through personal testimony, presentation of documents, and questioning of adverse witnesses. There is no indication that the hearings in plaintiffs' cases were deficient in terms of any of the elements deemed crucial by the *Goldberg* Court. While delegation of hearing responsibilities in such cases may not be ideal, the court holds that such delegation is neither uncommon nor unconstitutional.

### B.

Plaintiffs' remaining arguments set forth a more intriguing question. It is readily apparent that the opinions of the Appeals Board in the instant case simply do not conform to the administrative standards and decisional law imposed in adjudications of Title II and Title XVI entitlement. Aside from the final incongruity of differing determinations under exactly the same definition, the fact is that the reasoning processes of the DMAS Appeals Board are quite different than those of the Social Security Administration's Appeals Council and Administrative Law Judges. The question before the court is whether Virginia's adoption of the SSI definition of disability necessitates the adoption of all the interpretative SSI regulatory procedures, rulings, and decisional law attending to that definition. The court concludes that this question must be answered in the negative.

The court believes that the arguments raised by plaintiffs are best viewed in an overall context. However, in undertaking its analysis, the court finds it useful to consider several of plaintiffs' arguments on an individual basis.

■ As previously noted, one of the key circumstances giving rise to plaintiffs' arguments is that the DMAS Appeals Board uses different reasoning processes and terminology than does the Social Security Administration, even though both purportedly operate under the same regulatory scheme.[6] For example, both plaintiffs ar-

---

(b) The record must consist only of—
(1) The transcript or recording of testimony and exhibits, or an official report containing the substance of what happended at the hearing;
(2) All papers and requests filed in the proceeding; and
(3) The recommendation or decision of the hearing officer.
(c) The applicant or recipient must have access to the record at a convenient place and time.
(d) In any evidentiary hearing, the decision must be a written one that—
(1) Summarizes the facts; and
(2) Identifies the regulations supporting the decision.
(e) In a *de novo* hearing, the decision must—

(1) Specify the reasons for the decision; and
(2) Identify the supporting evidence and regulations.
(f) The agency must take final administrative action within 90 days from the date of the request for a hearing.
(g) The public must have access to all agency hearing decisions, subject to the requirements of Subpart F of this part for the safeguarding of information.

6. On March 14, 1986, defendants' attorney notified the court by letter that after a thorough investigation, it had been determined that the DMAS does employ the federal regulations, 20 C.F.R. § 416.901 *et seq.*, in making disability deter:ninations.

gue that the Appeals Board erred in finding that they do not suffer from a "severe impairment." Plaintiffs cite a decision of the United States Court of Appeals for the Fourth Circuit and a Social Security Ruling, respectively, for the propositions that pneumoconiosis (of a severity sufficient to warrant entitlement to black lung benefits) and an I.Q. below 80 necessarily constitute "severe impairments," for purposes of adjudications under Title II and XVI. However, the Fourth Circuit decision, *Evans v. Heckler*, 734 F.2d 1012 (4th Cir.1984), and the Social Security Ruling, 82–55, are both directed to the term "severe impairment" as it is used under 20 C.F.R. §§ 404.1520(c) and 416.920(c). Stated briefly, under §§ 404.1520(c) and 416.920(c), a finding of "severe impairment" is made at the second step of a five-step sequential disability analysis. The question as to the claimant's total disability is not decided at this second step. Thus, under these social security regulations, a claimant may suffer a "severe impairment" and still not be disabled.

The Appeals Board's written decisions in this case are so rambling and unstructured that it is simply impossible to determine whether the Board attempted to strictly apply the sequential disability analysis. It is just as likely that the Board was using the term "severe" as it appears in the SSI definition of disability:

> ... an individual shall be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot ... engage in any other substantial work....

42 U.S.C. § 1382c(a)(3)(B). Thus, while the opinions are poorly structured and inartfully worded, it appears to the court that the Appeals Board used the term "severe impairment" synonymously with "disabling impairment." [7]

In any event, regardless of the manner in which the Board used the term, it is clear that the Board considered Mr. Mullins' black lung and Mrs. Ratliff's low mentality in making its disability evaluations. It is simply not of controlling significance that the Board did not word its opinions in the same manner required for the social security administrative officers who use the same adjudicative standards. As to the variations in the structure and terminology of the Board's opinions vis-a-vis those of the social security functionaries, the court concludes that the differences were merely of form rather than substance.

The same reasoning applies to several of plaintiff's other contentions. The Appeals Board noted that there was no evidence of end organ damage in either case. It is true that the Board did not state in so many words that it had considered the functional limitations caused by plaintiffs' hypertension and diabetes even in the absence of organ damage. Similarly, the Appeals Board did not explicitly state that it had considered the combined impact of each plaintiff's impairments. Yet, there is no indication that such consideration was not given, and a reading of the Appeals Board's decisions suggests to the court that the combination of all impairments was considered.[8] It appears that, once again, plaintiffs' dissatisfaction rises from the fact that the Appeals Board's opinions do not conform to the format and wording used by social security personnel. Nevertheless, it is clear to the court that the Appeals Board considered all the available evidence in determining that each plaintiff could still work.

In performing their appellate functions pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), the federal courts have developed a significant body of decisional law

---

7. In Mrs. Ratliff's case, the Appeals Board found that "[n]one of her conditions are severe enough to *restrict* Ms. Ratliff from work related activities." The Appeals Board decisions appear in the record as attachments to plaintiffs' original complaint.

8. The Board noted that Mr. Mullins suffers from arteriosclerotic heart disease with hypertension, pneumoconiosis, anemia, and shortness of breath. Mrs. Ratliff was found to be suffering from a seizure disorder, diabetes, hypertension, depression, and low I.Q. In each case, two physicians served on the Appeals Board.

which now governs adjudications of Title II and Title XVI entitlement.[9] This decisional law requires that in a number of circumstances, the administrative officer must explicitly state that he has considered certain particular elements in a particular way. Plaintiffs would now impose this same decisional law upon the state officials entrusted with Medicaid eligibility determinations. However, the court concludes that there is no legal basis for the transposition of this body of federal law onto the relatively simple and fact-specific Medicaid adjudicatory scheme established by the State of Virginia. It is one thing to adopt a specific definition for one's own purposes; it is quite another to attempt to incorporate everyone else's definition of the definition. The State of Virginia chose to do the former, and cannot now be required to do the latter. There is no constitutional right mandating what terminology state officials must use in their opinions denying Medicaid claims. There are no statutory provisions which authorize the federal courts to review state Medicaid decisions, as long as the state hearing process is fair and consistent with the due process guarantees outlined above. Plaintiffs' efforts to impose these additional requirements are without constitutional or statutory support.

■ The court now turns to the very simple question which provides the basic thrust of plaintiffs' complaint: how can the contradictory administrative decisions in this case be reconciled and are constitutional principles involved? The answer is equally simple: disability is not an absolute concept, and the same evidence as to disability is often subject to more than one interpretation. In the recent case of *Rousseau v. Bordeleau*, 624 F.Supp. 355 (D.R.I. 1985), the United States District Court for the District of Rhode Island recognized the inevitability of conflicting decisions in this subject area:

> ... the parties agree that both the Medical Assistance Program and the SSI Program use the same definition of disability when evaluating a disability claim. The parties also agree that despite the use of the same standards, due to the complexity of the matters involved in resolving close questions, two different agencies applying the same standards may reach different results. It is possible that under the same circumstances the Social Security Administration could find that Plaintiffs Rosseau or McKenna did not meet the disability requirements of 42 U.S.C. § 1382c, and that DHS could find that they did meet the disability requirements defined in 42 U.S.C. § 1382c and would therefore be eligible for Medical Assistance.

624 F.Supp. at 357.[10] The significance of this subjective element in a disability evaluation cannot be overstated. Rightly or

---

**9.** The case of *Dotson v. Schweiker, supra,* cited by plaintiffs, is an example of decisional law which has been enhanced by Congress' adoption of the underlying principle in amendments to the Social Security Act. *See* 42 U.S.C. § 423(f), as amended, and 42 U.S.C. § 1382c(a)(5), as amended. The court observes that *Dotson* has no relevance to plaintiffs' case. *Dotson* required the Secretary of Health and Human Services to explicitly apply a presumption of continuing disability in those social security cases in which the Secretary sought to terminate eligibility due to medical improvement. The presumption would have no relevance in a case in which eligibility had previously been terminated, and the issue of disability arose on the basis of a new application. In any event, *Dotson* has now been supplanted by 42 U.S.C. §§ 423(f) and 1382c(a)(5) which clearly apply only to termination cases.

**10.** The *Rousseau* case offers an interesting comparison to the instant case. In *Rousseau,* the plaintiffs had been denied SSI benefits by the Social Security Administration on the basis of findings of no disability. Relying on these findings, the State of Rhode Island denied plaintiffs' subsequent claims for Medicaid benefits. In their complaint, plaintiffs sought to compel the State of Rhode Island to make independent determinations as to disability. The District Court eventually entered an injunction providing for such independent determinations irrespective of the Social Security Administration's determination. A similar prayer for relief was before this court in *Lester v. Lukhard,* 622 F.Supp. 316 (W.D.Va.1985). However, that action was rendered moot prior to disposition on the merits. The linchpin of this line of cases is the proposition that federal and state authorities may properly reach different factual decisions while operating under the same legal standard.

wrongly, a disability determination is not a mechanized process in which the consideration of the same evidence, under the same standard, will always lead to the same result. The mere fact that variations do occur does not serve to give rise to a viable constitutional claim.

## CONCLUSION

The court finds no support for the assertion that the Virginia procedures for adjudication of Medicaid entitlement are inconsistent with the due process requirements of *Goldberg v. Kelly, supra.* The court also concludes that plaintiffs' remaining contentions are without merit. The court finds that the Virginia DMAS does not explicitly incorporate all federal regulatory provisions and decisional law in rendering its disability determinations. However, the court concludes that the disability determinations in the instant case were completed in a competent, thorough, and professional manner. While the final opinions of the Appeals Board may not be worded so as to satisfy all the requirements of federal social security decisional law, it is simply not appropriate for the court to impose stylistic criteria in a decision-making process which is clearly delegated by statute to state authorities. It is only necessary that the court determine whether the state hearings are fair, and whether the results are reasonably related to the evidence. The court concludes that these fundamental requirements have been satisfied.

For the reasons as stated, summary judgment must be entered in favor of the defendants. An appropriate judgment and order will be entered this day.