Helen J. BROWN, et al., individually and on behalf of all others similarly situated, Plaintiffs,

Albert Chapman, et al., individually and on behalf of all others similarly situated, Plaintiffs–Intervenors,

v.

J.W. LUNA, in his official capacity as Commissioner, Tennessee Department of Health and Environment, et al., Defendants.

No. 3:88–0326.

United States District Court, M.D. Tennessee, Nashville Division.

April 26, 1990.

Lenny L. Croce, Legal Services, Oak Ridge, Tenn., Richard King, Legal Services, Cookeville, Tenn., Gordon Bonnyman, Legal Services, Nashville, Tenn., David Kozlowski, Legal Services, Columbia, Tenn., and Jeffrey Armstrong, Legal Ser-

vices, Morristown, Tenn., for plaintiffs and plaintiffs-intervenors.

Jennifer Helton Small, Asst. Atty. Gen., Nashville, Tenn., for defendants.

## MEMORANDUM

WISEMAN, Chief Judge.

This matter is currently before the Court on two motions. Plaintiffs seek to have defendants adjudicated in civil contempt for violation of this Court's August 29, 1988, Partial Consent Order ("the Order"). Defendants' motion asks the Court to modify the Order based upon changes in federal law. At a hearing on these motions on March 5, 1990, the Court held that defendants were in contempt of Court for failure to substantially comply with the Order. Accordingly, defendants were ordered to submit a plan for a proposed remedy and plaintiffs were invited to respond to that proposed remedy. Hearings on the proposed remedy were held on March 26 and April 16. As explained below, the Court: 1) again finds that defendants are in civil contempt for failing to adhere to the Court's August 1988 Partial Consent Order and issues an appropriate sanction therefor; and 2) GRANTS defendants' motion to modify the Order based upon subsequent changes in federal law.

This case involves disability-based medical assistance provided under the Medicaid program. When this action was initiated, federal law required that the Tennessee Department of Human Services ("DHS") make determinations of eligibility under the program within 60 days from the date of application. 42 U.S.C. § 1396a(a)(8) ("assistance shall be furnished with reasonable promptness to all eligible individuals"); 42 C.F.R. § 435.911(a)(1) (1989) (establishes the 60-day time limit); 42 C.F.R § 435.930(a) (1989) (a state agency must "[f]urnish Medicaid promptly to recipients without any delay caused by the agency's administrative procedures"). DHS is relieved of the 60-day time limitation when there are delays in the case beyond the agency's control. 42 C.F.R. § 435.911(c)(1) and (2) (1989).

## THE PARTIAL CONSENT ORDER

Plaintiffs filed this action in April of 1988, alleging that defendants were not determining Medicaid eligibility on the basis of disability within the guidelines set forth above. Following "extensive negotiations," the parties agreed to a "partial consent order for prospective relief" which was entered by this Court on August 29, 1988. The Order, which remains in force, contains the following important provisions: 1) DHS must make eligibility determinations "within 60 calendar days as required under 42 U.S.C. § 1396a(a)(8) and (17) and 42 C.F.R. §§ 435.911 and 435.930, except where delay is for 'good cause'." Order at ¶ 12. 2) An application is delayed with good cause only if defendants have documented that they have complied with timetables for the eligibility determination process which were agreed to by the parties, or the delay is caused by an "emergency beyond the control of DHS." Order at ¶ 13. 3) DHS must determine by 80 days from the date of application whether any application still pending on the 61st day was delayed with or without good cause. Order at ¶ 14. 4) Finally, footnote 2 of the Order provides, in part:

"The parties acknowledge that possible future changes in federal law or regulations may affect the time frames prescribed in this order to meet current federal timeliness standards. This consent order shall not preclude any party from seeking or opposing modification of this order in response to future changes in federal law or regulations...."

Order at p. 11, n. 2.

## DEFENDANTS' CONTEMPT

In August of 1989, plaintiffs moved the Court to hold that defendants were in contempt of the Order. Following review of the extensive pleadings and exhibits filed by both parties, the Court ruled on March 5, 1990, that defendants were in contempt due to their failure to substantially comply with the Order. Defendants admit that they have not been making good cause determinations for cases pending more than 60 days within the strictures of the Order. In addition, plaintiffs have

demonstrated that a substantial number of cases *designated* as delayed with good cause did not have the proper documentation of good cause required by the Order.

Defendants also admit that they did not make eligibility determinations in compliance with the Order prior to May 1989. For the months of May through August of 1989, however, defendants argue that they were in substantial compliance. Defendants assert that since only 2.8% of all eligibility decisions were *approvals* after 60 days *without good cause*, then they were in compliance. Plaintiffs, on the other hand, contend that the appropriate statistic is that 28% of all eligibility determinations from April through August 1989 were made after 60 days. Cited alone, however, neither of these statistics can tell the full story of defendants' level of compliance. Defendants fail to recognize that *all* determinations made after 60 days without good cause, whether approvals or denials, violated the order. Plaintiffs fail to recognize that delays not attributable to defendants are improperly included in their 28% figure.

There are other relevant statistics which may be divined from the materials supplied to the Court by the parties. From May through December of 1989: Twenty-eight percent, or 1,023 of 3,635 total cases decided after 60 days were delayed without good cause; 6.4% or 1,023 of 15,918 total eligibility decisions made were designated by DHS as delayed beyond 60 days without good cause; and an average of 16.7% of the cases awaiting an eligibility determination had been pending over 60 days. In addition, defendant Mary Ann Calahan admitted to the Court that many of the cases designated by DHS as delayed with good cause may actually have been delayed without good cause. Calahan stated that proper documentation procedures were not followed in several instances. Combined, these various factors lead the Court to reiterate its earlier ruling that defendants have failed to substantially comply with this Court's August 29, 1988, Order.

▇ When a consent decree is entered in a case, a court will: "1) retain jurisdiction over the decree during the term of its existence; 2) protect the integrity of the decree with its contempt powers; and 3) modify the decree should 'changed circumstances' subvert its intended purpose." *Williams v. Vukovich,* 720 F.2d 909, 920 (6th Cir.1983). Contempt proceedings are an appropriate avenue through which this Court may assure compliance with its August 1988 Partial Consent Order. *See Kendrick v. Bland,* 740 F.2d 432, 439 (6th Cir.1984). The Court therefore finds defendants in contempt.

## MODIFICATION OF THE 1988 ORDER

▇ Before the Court can set forth its sanction for defendants' contempt, defendants' motion to modify the Consent Order must be addressed. Defendants have requested that the Court modify the Order to reflect changes in federal law which have occurred subsequent to its entry. Specifically, defendants move that the 60–day timeliness standard set forth in the Order be extended to 90 days.

The federal regulations governing the timeliness standard for determinations of Medicaid eligibility on the basis of disability, 42 C.F.R. § 435.911, have been amended, effective January 10, 1990. That regulation now sets the maximum time within which eligibility must be determined at 90 days. The 60–day standard adopted by the parties and the Court was based upon the federal regulations in force at that time. "DHS will make determinations of eligibility concerning applications for medical assistance on the basis of disability within 60 calendar days as required under 42 U.S.C. § 1396a(a)(8) and (17) and 42 C.F.R. §§ 435.911 and 435.930...." Order at ¶ 12. In addition, footnote 2 of the Order refers to "the time frames *prescribed in this order to meet current federal timeliness standards.*" Order at p. 11 n. 2 (emphasis added). Clearly, therefore, the intent of the parties and the purpose of the Order was to enforce the timeliness provisions of federal law.

▇ "To modify consent decrees [which affect the operation of a governmental organization], the court need only identify a defect or deficiency in its original decree

which impedes achieving its goal...." *Heath v. DeCourcy,* 888 F.2d 1105, 1110 (6th Cir.1989). "The decrees reach beyond the parties involved directly in the suit and impact on the public's right to the sound and efficient operation of its institutions." *Id.* at 1109. Even if this were a consent decree between private parties, however, the Court has the power to modify its order when the circumstances of the case have changed. *Stotts v. Memphis Fire Dep't,* 679 F.2d 541, 560–61 (6th Cir.1982), *rev'd on other grounds,* 467 U.S. 561, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984), *cited in Heath,* 888 F.2d at 1108.

The circumstances of this case have changed, inasmuch as the federal regulations upon which ¶ 12 of the Order was based have been amended. The clear purpose of the original Order was to enforce the federal regulations, not to require more of defendants than is required of other similar agencies across the country. Accordingly, except as limited by the sanction described below, the Order is hereby MODIFIED to include a 90–day timeliness standard.

*THE SANCTION*

■ As a sanction for defendants' violation of this Court's August 1988 Order and to assure future compliance, the Court ORDERS the following additional modifications to the 1988 Order. Beginning on May 1, 1990:

1) For each application pending more than 60 days, DHS shall determine by the 80th day whether, as of the 60th day, good cause for the delay existed.

2) All applications pending more than 90 days without an eligibility decision shall be awarded interim Medicaid benefits unless DHS has documented that the application has been delayed for good cause. Interim benefits cards shall be delivered to the applicant by the 91st day. Applications delayed more than 90 days without good cause (determined as of the 60th day) shall continue to receive interim benefits until such time as DHS makes a final determination of eligibility.

3) All applications delayed more than 90 days with good cause shall be reevaluated by DHS by the 100th day to determine whether good cause for the delay continued to exist as of the 90th day. Applications found to be delayed without good cause shall be awarded interim benefits to continue until such time as DHS makes a final determination of eligibility. Interim benefits cards for cases determined as of the 90th day to be delayed without good cause shall be delivered to the applicants by five business days after the determination of no good cause. DHS shall continue in a like manner to re-evaluate every 30 days those applications previously found to be delayed with good cause. Interim benefits shall be awarded in all cases where good cause for delay no longer exists within five days of the no good cause determination.

4) DHS shall not use the timeliness standards set forth herein as a waiting period for determining eligibility.

5) DHS shall continue to implement the improvements in its system for determining eligibility as set forth in defendants' *Submission Pursuant to Contempt Order* filed with the Court on March 19, 1990.

------------------------

■ At the April 16 hearing, counsel for defendants argued that the Court's plan improperly requires 100% compliance with federal law. Defendants cite 42 U.S.C. § 1396a(c)(2), which limits the federal government's authority to take action against a state to a failure by the state to substantially comply with the regulations. Defendants also cite case law in which courts have only required states to substantially comply with federal welfare regulations. *See Shands v. Tull,* 602 F.2d 1156, 1160 (3rd Cir.1979). The Fourth Circuit, however, has held that a district court *may* require 100% compliance with an AFDC requirement that benefits "be furnished with reasonable promptness." *Alexander v. Hill,* 707 F.2d 780, 784 (4th Cir.), *cert. den.* 464 U.S. 874, 104 S.Ct. 206, 78 L.Ed.2d 183 (1983). An identical statutory provision is at issue in this case. Furthermore, both the statute and case law cited by defendants are distinguishable from this Court's instant ruling.

As this Court held on March 5 and has reiterated above, defendants have failed to substantially comply with the August 1988 Order. The Court's plan outlined above is not merely a means to bring defendants into compliance with federal law. The plan is a sanction for defendants' past violations of the Court's valid and enforceable Order. "A consent decree, although founded on the agreement of the parties, is a judgment.... As a judgment, it may be enforced by judicial sanctions, including citation for contempt if it is violated." *United States v. Miami*, 664 F.2d 435, 439–40 (5th Cir.1981). In fashioning remedial relief for civil contempt, this Court "may require the contemnor to perform various affirmative acts, even though these actions were not mandated by the underlying decree." *In re Arthur Treacher's Franchisee Litigation*, 689 F.2d 1137, 1158–59 (3rd Cir.1982). Therefore this Court may now require both 100% compliance with the deadlines set forth above, and, inasmuch as those deadlines reflect federal regulations, 100% compliance with those regulations.

The harm of interim benefits is in the burden they place on the state agency. *See Smith v. Miller*, 665 F.2d 172, 176 (7th Cir.1981). The *Smith* case involved delays in processing applications by current Medicaid recipients for special medical services. As part of its remedy for the untimely processing of the applications, the district court ruled that all untimely processed applications would be automatically approved. The Seventh Circuit effectively weighed the burden on the state of automatic approval against the hardship placed on Medicaid applicants by the undue delay of their applications. In *Smith*, the court found that "delay beyond the time limits may ... impose lingering, if not irreversible, hardships upon recipients." *Id.* at 177. The Seventh Circuit held that automatic approval was not "an impermissible remedy to ensure a state Medicaid agency's compliance" with federal law. *Id.*

Similar to the situation in *Smith*, retroactive benefits cannot fully remedy delayed eligibility determinations. *See Id.* In some instances, members of the plaintiff class have been unable even to obtain appropriate medical care because of the defendants' delays in processing the Medicaid applications. Retroactive benefits provide no relief for these people. Although the Court's award of interim benefits in some instances places a burden on DHS, the agency may eliminate this burden simply by complying with the time limits required by law as set forth in the August 1988 Order and this Order. Weighing the burden on defendants of interim benefits in all cases delayed beyond 90 days without good cause against the burden on plaintiffs of delayed medical assistance, the Court determines that interim benefits are a just remedy for defendants' contempt.

Defendants also argue that an Order requiring interim benefits as set forth in the Court's plan would be violative of the Eleventh Amendment. Current Eleventh Amendment jurisprudence, however, allows a federal court to order a state to pay civil fines in order to enforce its orders. "Against a state that violates a valid federal court decree the court has the power to issue any order necessary to enforce the decree, including an order to pay." *Wisconsin Hospital Ass'n v. Reivitz*, 820 F.2d 863, 868 (7th Cir.1987) (citing *Hutto v. Finney*, 437 U.S. 678, 690–91, 98 S.Ct. 2565, 2573, 57 L.Ed.2d 522 (1978)). "A fine for contempt, payable by the defendants in their official capacities (and therefore by the state itself ...) [is] within the power of the district court." *Id.* Certainly if a fine may be imposed on defendants for their violation of the Order, then the sanction of interim benefits may also be imposed. The crucial consideration is that the plaintiffs' relief against a state be entirely prospective. *See Alexander*, 707 F.2d at 783. Defendants have had more than a year to bring their practices into line with the federal regulations. "Had they succeeded in doing so, no remedial fines would ever have been payable." *Id.*

Finally, counsel for defendants indicated concern that the Court's remedy will not afford the parties "finality" in this matter. Counsel proposed that the defendants be relieved of the constraints of this Court's

order upon proof at some future date that they are complying with the Consent Order and federal law. The instant Order, however, provides an entirely sufficient measure of finality. Defendants have two options for cases not delayed for good cause: they may determine eligibility within the 90 days required by law, or they may pay interim benefits. Defendants need not appear before this Court again in this matter unless they fail to exercise one of those two options.

### ORDER

As explained in the accompanying Memorandum, defendants' motion for modification of the August 1988 Partial Consent Order is GRANTED. In addition, and as previously stated in this Court's March 6 Order, defendants are adjudicated in contempt of the August 1988 Order.