**Patrick ADDIS, et al., Plaintiffs–
Appellants,**

v.

**Gerald WHITBURN, individually and in
his official capacity as Secretary of the
Wisconsin Department of Health and
Social Services, et al., Defendants–Appellees.**

No. 96–3748.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 15, 1997.

Decided Sept. 4, 1998.

Rehearing and Suggestion for Rehearing
En Banc Denied Oct. 5, 1998.

**837**

ILANA DIAMOND ROVNER, Circuit Judge.

At issue in this complex case is the validity of various aspects of the State of Wisconsin's Medical Assistance plan. Plaintiffs contend that portions of the state program violate the federal Social Security Act and thus should be enjoined, and that one aspect of the program also violates the Americans with Disabilities Act and the Rehabilitation Act. Rather than granting the requested injunction, the district court dismissed plaintiffs' complaint in its entirety, finding that plaintiffs could not succeed in showing that any of the challenged portions of Wisconsin's program violates federal law. Because we believe that two aspects of the state plan are inconsistent with a provision in the Social Security Act, we reverse the district court's judgment in part and affirm in part.

I.

At this stage of the proceedings, we assume the truth of the facts alleged in plaintiffs' complaint and draw all reasonable inferences from those facts in plaintiffs' favor. *Ashafa v. City of Chicago,* 146 F.3d 459, 461 (7th Cir.1998). Defendants—the Secretary of Wisconsin's Department of Health and Social Services and others working under his direction—do not dispute that plaintiffs' complaint, as well as their opening brief to this court, accurately describe the operation of Wisconsin's Medical Assistance plan. Their response to the complaint is that the plan does not violate federal law. We therefore base the following summary of Wisconsin's Medical Assistance plan on the allegations in plaintiffs' complaint and on the description provided in plaintiffs' opening brief.

The Medical Assistance program, more commonly known as "Medicaid," is a federal program administered by the states. The federal government provides partial reimbursement to participating states for the cost of medical services provided under the program, as well as for the cost of the program's administration. Yet in order to receive those federal funds, a state must operate its medical assistance program in compliance with the Social Security Act ("SSA") and its implementing regulations (*see* 42 U.S.C.

Amy Shapiro, Calvey, Lara & Shapiro, Milwaukee, WI, Patricia DeLessio (argued), Milwaukee, WI, for Plaintiffs–Appellants.

Donald P. Johns, Susan K. Ullman (argued), Office of Attorney General, Wisconsin Department of Justice, Madison, WI, for Defendants–Appellees.

Before POSNER, Chief Judge, and CUMMINGS and ROVNER, Circuit Judges.

§ 1396a(a)), not always an easy task given the maze of statutory provisions and federal regulations involved. *E.g. Schweiker v. Gray Panthers,* 453 U.S. 34, 43, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981) ("The Social Security Act is among the most intricate ever drafted by Congress. Its Byzantine construction, as Judge Friendly has observed, makes the Act 'almost unintelligible to the uninitiated.' "). We provide a brief overview below of the provisions relevant here.

Under the SSA, states are required to provide medical assistance to certain categories of individuals, whereas coverage to others is optional. *See* 42 U.S.C. § 1396a(a)(10)(A)(i). In all, we shall refer to three categories of potential recipients—the "categorically needy," the "medically needy," and those whose need is determined in relation to the poverty level. Individuals included in the following groups are considered "categorically needy" and thus are automatically entitled to medical assistance coverage: (1) those who receive Aid to Families with Dependent Children ("AFDC") benefits and Supplemental Security Income ("SSI") benefits; (2) pregnant women, children under eighteen and their caretakers, and disabled persons with income and assets at or below AFDC limits; (3) those who lose their eligibility for AFDC benefits due to increased earnings or child support income; and (4) infants under the age of one who are born to women who are eligible for medical assistance at the time of the infant's birth. *Id.*

In addition to the "categorically needy" groups, states are permitted at their option to provide coverage to those who are considered "medically needy," a group generally including pregnant women, children, and disabled and elderly persons who otherwise would qualify for AFDC and SSI benefits except that their income and asset levels exceed the levels permitted under those programs. Wisconsin has chosen to provide medical assistance to those in the "medically needy" category, and it has established standards for obtaining that assistance which are based on the size of the recipient's family. The SSA requires that a state's need standards be "equivalent to 133 1/3 percent of the highest amount which would ordinarily be paid to a family of the same size" under the state's AFDC program. 42 U.S.C. § 1396b(f)(1)(B)(i). Moreover, if an applicant's income exceeds the state's need standards, he still may qualify for medical assistance after satisfying a deductible calculated on the basis of his excess income. *See* 42 C.F.R. § 435.831(e).

The final group of medical assistance recipients includes pregnant women and children who do not qualify as either categorically or medically needy but whose family income is at or below a designated percentage of the poverty level. *See* 42 U.S.C. § 1396a(a)(10)(A)(IV-VII). States are required, for instance, to provide medical assistance to pregnant women and infants less than one year of age whose family income is at or below 133 percent of the poverty level; to children under the age of six whose family income is at or below 133 percent of the poverty level; and to children born after September 30, 1993 who are between the ages of six and nineteen and whose family income is at or below 100 percent of the poverty level. *Id.* At their option, states may also provide medical assistance to pregnant women and infants less than one year of age whose family income is at or below 185 percent of the poverty level. *Id.* In Wisconsin, the medical assistance program covering this "poverty level" group is referred to as the "Healthy Start" program. See Wis. Stats. §§ 49.46 & 49.47.

In addition to these specific categorical guidelines, the SSA also requires that state medical assistance plans comply with certain more general principles. First, states must develop and utilize standards for determining income and resource eligibility that are no more restrictive than those employed in determining eligibility for the SSI program for SSI-related persons and the AFDC program for AFDC-related persons. 42 U.S.C. § 1396a(a)(10)(C)(i). Second, states are directed in establishing eligibility standards to provide a reasonable evaluation of the income and resources available to the applicant or recipient and to take account only of income and resources that are actually so available. 42 U.S.C. § 1396a(a)(17)(B) & (C). At the same time, states are prohibited from taking into account "the financial responsibility of any individual for any applicant or recipient"

unless the individual is the applicant's spouse or parent. 42 U.S.C. § 1396a(a)(17)(D). Finally, in determining whether pregnant women and children are eligible for participation in a poverty level program such as Wisconsin's "Healthy Start," states are required to determine family income in accordance with the methodology employed under that state's AFDC program, except to the extent that the methodology is inconsistent with 42 U.S.C. § 1396a(a)(17)(D)'s financial responsibility rule. 42 U.S.C. § 1396a(*l*)(3)(E).

Having elected to participate in the Medicaid program, Wisconsin must attempt to successfully navigate these federal requirements, the most troublesome of which seems to be the financial responsibility rule of 42 U.S.C. § 1396a(a) (17)(D) ("subsection (17)(D)"). Prior to June 1, 1993, Wisconsin determined eligibility for medical assistance by treating all related persons in a single household as one group, except in limited circumstances. The income and assets of that household group were then compared to the state's need standard for a group of that size to determine eligibility for medical assistance. In a series of administrative hearing decisions, however, the Wisconsin Department of Health and Social Services determined that this practice violates subsection (17)(D) when an individual other than the applicant's spouse or parent has his or her own income that is included in the total income of the household group.

In response to those decisions, Wisconsin adopted the Family Fiscal Unit policy ("FFU") for determining eligibility for medical assistance. Under that policy, Wisconsin no longer considers the income and assets of the entire family group in assessing an applicant's eligibility, but sets up individual fiscal test groups that are designed to avoid assigning income to the applicant that was earned by a non-legally responsible person—*i.e.*, by someone other than the applicant's spouse or parent. As the district court explained it, eligibility is now determined "one individual at a time rather than family by family." R. 19, at 5. Thus, under the FFU policy, eligibility is determined first by calculating the applicant's own income and assets and adding to them a prorated share of the income and assets of the applicant's spouse or parent.[1] Once the applicant's income is so calculated, it is compared to a pro rata share of the state's need standard for the size of the entire family under consideration. In other words, Wisconsin does not compare the income of a family fiscal unit to the need standard for a unit of that size or even to a pro rata share of the standard for a group of the unit's size; it instead compares the applicant's income as calculated under the FFU policy to the need standard for the entire family group, as prorated amongst the group's individual members.

And as we said, even if the applicant's income exceeds the limits of the state's need standards, he still may qualify for medical assistance after satisfying a deductible amount. Under Wisconsin's FFU policy, it is possible that more than one fiscal unit within a related household will have a medical assistance deductible, and in that case, Wisconsin requires that the deductible amounts be combined in order to establish a deductible for the entire family group. Thus, an individual applicant will not qualify for medical assistance until he satisfies not only his own deductible, but also the combined deductible of his entire family group.

Finally, where a child's caretaker who is herself disabled requests medical assistance both for herself and for the child or children in her care, Wisconsin does not permit the caretaker to deduct from her own income that portion of her income that has been allocated to her children under the FFU policy, provided that the caretaker's income does not fall below the medical assistance categorical levels. As a result, the eligibility of the disabled caretaker for medical assistance is determined without considering the support she provides to her minor children.

## II.

Plaintiffs, all of whom allege that they were harmed by the implementation of

---

1. That prorated share is calculated by dividing the legally responsible relative's income and assets by the total number of persons for whom the relative is legally responsible, including himself or herself. Spousal and parental income is thus allocated equally amongst the spouse or parent and those for whom she is financially responsible.

Wisconsin's FFU policy, raise a variety of challenges to that policy. First, plaintiffs contend that aspects of the policy are inconsistent with the federal Social Security Act. Plaintiffs further argue that Wisconsin's treatment of disabled caretakers violates the Social Security Act, the Americans with Disabilities Act, and the Rehabilitation Act. The district court rejected each of these contentions, concluding that Wisconsin's medical assistance program fully complies with the requirements of federal law. Our review of the district court's decision is plenary. *See Berman v. GC Services Ltd. Partnership*, 146 F.3d 482, 484 (7th Cir. 1998) (dismissal of complaint and interpretation of federal statute both subject to plenary review).[2]

■ As we indicated above, the Medicaid program is a cooperative venture between the federal government and the individual states choosing to participate in it. *Michael Reese Physicians and Surgeons, S.C. v. Quern*, 606 F.2d 732, 735 (7th Cir.1979), *adopted on reh'g en banc*, 625 F.2d 764 (7th Cir.1980), *cert. denied*, 449 U.S. 1079, 101 S.Ct. 860, 66 L.Ed.2d 802 (1981); *Vance v. Hegstrom*, 793 F.2d 1018, 1019 (9th Cir.1986). The program was designed to provide the states with a degree of flexibility in designing plans that meet their individual needs. *Michael Reese*, 606 F.2d at 735. As such, states are given considerable latitude in formulating the terms of their own medical assistance plans. *See Smith v. Miller*, 665 F.2d 172, 174 (7th Cir.1981); *see also generally Dandridge v. Williams*, 397 U.S. 471, 487, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *King v. Smith*, 392 U.S. 309, 318–19, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). But the discretion afforded the states is not unlimited. Rather, it

is qualified by the requirement that a participating state fully comply with the federal statutes and regulations governing the program. *Schweiker v. Gray Panthers*, 453 U.S. 34, 36–37, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981); *Smith*, 665 F.2d at 175 & 178. As we explained in *Smith v. Miller*, "a state's discretion in administering the Medicaid program does not shelter it from judicial action on those occasions where it has transgressed the strictures of the Social Security Act." 665 F.2d at 178.

■ Plaintiffs' most significant challenges to Wisconsin's medical assistance plan relate to whether aspects of the plan comply with subsection (17)(D). We therefore begin with the language of that subsection:

A State plan for medical assistance must

. . .

(17) . . . include reasonable standards . . . for determining eligibility for and the extent of medical assistance under the plan which . . . (D) do not take into account the financial responsibility of any individual for any applicant or recipient of assistance under the plan unless such applicant or recipient is such individual's spouse or such individual's child who is under age 21

. . .

42 U.S.C. § 1396a(a)(17)(D). This subsection, which allows a state to allocate or "deem" the income of a legally responsible spouse or parent to an applicant for medical assistance,[3] plainly prohibits a state from taking into account the financial responsibility of any other person for the applicant. Thus, this court and others have uniformly held that in determining eligibility for medi-

---

**2.** Plaintiffs brought the instant claims under 42 U.S.C. § 1983 to redress violations of federal law they claim exist in the state program. Defendants have not suggested that such a claim may not be maintained under section 1983. We therefore assume for purposes of this litigation that plaintiffs' claims were properly brought under that statute. *Cf. Smith v. Miller*, 665 F.2d 172, 175 (7th Cir.1981) ("Congress intended that the 'full panoply' of judicial remedies be available to courts considering in 42 U.S.C. § 1983 actions a state's compliance with the Social Security Act."); *see also Reed v. Blinzinger*, 639 F.Supp. 130 (S.D.Ind.1986), *aff'd. & adopted*, 816 F.2d 296 (7th Cir.1987) (action brought pursuant

to section 1983 alleging that aspects of state medical assistance program were inconsistent with the SSA.).

**3.** The practice of assigning income to an applicant without also inquiring into whether that income actually is available to the applicant is known as the "deeming" of income. *See Herweg v. Ray*, 455 U.S. 265, 267, 102 S.Ct. 1059, 71 L.Ed.2d 137 (1982); *Vance*, 793 F.2d at 1020 n. 1. As the Supreme Court has explained, the "deeming" of income "has the effect of reducing both the number of eligible individuals and the amount of assistance paid to those who qualify." *Gray Panthers*, 453 U.S. at 36, 101 S.Ct. 2633.

cal assistance, a state may not allocate to the applicant income of non-legally responsible persons in a related household, such as the applicant's siblings or grandparents. *Reed v. Blinzinger*, 816 F.2d 296, 297 (7th Cir.1987), *aff'g & adopting*, 639 F.Supp. 130 (S.D.Ind. 1986); *see also, e.g., Malloy v. Eichler*, 860 F.2d 1179, 1183–84 (3d Cir.1988); *Mitchell v. Lipscomb*, 851 F.2d 734, 736 (4th Cir.1988); *Olson v. Norman*, 830 F.2d 811, 818–20 (8th Cir.1987); *Vance*, 793 F.2d at 1024; *Childress v. Bowen*, 833 F.2d 231, 233 (10th Cir.1987); *State of Georgia Dep't of Medical Assistance v. Bowen*, 846 F.2d 708, 711 (11th Cir.1988). Indeed, as plaintiffs have alleged, it was precisely to avoid such prohibited deeming of income that Wisconsin adopted its FFU policy, which at the income determination stage, considers only the applicant's own income and a pro rata share of the income and assets of his legally responsible spouse or parent. Plaintiffs do not suggest that Wisconsin runs afoul of subsection (17)(D) at that initial stage. Rather, plaintiffs contend that Wisconsin's policy conflicts with the federal statute only at the final stage—when the applicant's income and resources are compared to a pro rata share of the state's need standard for the entire household group. According to plaintiffs, Wisconsin should be comparing the applicant's income and resources to the needs standard for the size of the applicant's family fiscal unit, not the size of the entire related household. The comparison Wisconsin has chosen to make, plaintiffs argue, assumes that the applicant's need is less because of the presence of non-legally responsible persons in the household. Plaintiffs contend that this assumption has the same effect as deeming the income of those nonlegally responsible relatives to the applicant.

A federal district court in California, and ultimately the Ninth Circuit in an unpublished opinion, accepted a similar argument about the operation of a similar state medical assistance plan in *Sneede v. Kizer*, No. C89–1932, 1990 WL 155532, at *5–7 (N.D. Cal. May 03, 1990), *aff'd. mem.*, 951 F.2d 360 (9th Cir.1991), *cert. denied*, 506 U.S. 939, 113 S.Ct. 375, 121 L.Ed.2d 286 (1992). The district court in that case found that California's system of prorating need standards "implicitly assum[es] that household members not financially responsible for the applicant are contributing to the applicant's living expenses and thus reducing the applicant's level of need—without inquiring into whether such contributions are actually made." *Id.* at *5. Judge Randa rejected the *Sneede* rationale in this case, however, concluding that "[t]he Wisconsin plan does not attribute the financial responsibility of nonlegally responsible individuals to Medicaid applicants or recipients" because the term "financial responsibility" in subsection (17)(D) "refers to income, resources, or an obligation to contribute income or resources to the household." R. 19, at 15. In the district court's view, "[t]he assumption that an individual's need is less because he lives in a household with multiple members is not the equivalent of deeming resources; rather, it reflects a common-sense judgment that living expenses are higher for individuals maintaining their own independent households than they are for individuals sharing accommodations." *Id.* at 15–16. Yet like the court in *Sneede*, we have some difficulty reconciling that view with the statutory language and the realities of the state's proration system. *See Sneede*, 1990 WL 155532, at *5.

The district court's decision effectively means that subsection (17)(D) applies only when a state is calculating the income available to a medical assistance applicant, and not to the state's assessment, based on that income determination, of whether the applicant is in need of medical assistance. But the statute does not appear to us to be so limited. Nothing in the statutory language suggests that subsection (17)(D) is limited to the calculation of an applicant's income. Instead, the statute provides that the financial responsibility of someone other than a spouse or parent may not be factored into the determination of "eligibility for and the extent of medical assistance" available under the state's plan. 42 U.S.C. § 1396a(a)(17)(D). In our view, that language must be read as encompassing all aspects of the eligibility determination, including the assessment of the applicant's need, for it is the need standard employed by the state that ultimately will determine both the applicant's eligibility for medical assistance as well as the amount of benefits that

will be available. And we agree with the court in *Sneede* that when a state assumes that an applicant's living expenses are less based solely upon the presence of non-legally responsible persons in the household, thereby reducing the applicant's level of need, the state necessarily is assuming that those persons will be contributing to the applicant's living expenses. *Sneede*, 1990 WL 155532, at *5–6. We thus cannot agree with the district court that Wisconsin only is taking account of the "economies of scale" inherent in the sharing of accommodations, for like the court in *Sneede*, we find that argument to be "premised on the assumption that contributions from members of the household [who] are not financially responsible for the applicant are nonetheless *actually* benefitting the applicant by reducing the amount of income/resources that applicant needs for non-medical essentials." *Id.* at *6 (emphasis in *Sneede*). Assuming the existence of that type of financial assistance is, in our view, the taking into account of the "financial responsibility" of that non-responsible individual. It is thus prohibited by subsection (17)(D). *See also Richardson v. Lewis*, No. 5:92–0731, slip op. at 15–16 (S.D.W.Va. Sept. 23, 1994) (finding similar proration policy inconsistent with subsection (17)(D) in that it "assumes that an individual's need is less because that individual resides with non-financially responsible relatives.").

Our conclusion that Wisconsin's proration policy is premised on an assumption prohibited by the financial responsibility rule of subsection (17)(D) finds support in the Supreme Court's decision in *Van Lare v. Hurley*, 421 U.S. 338, 95 S.Ct. 1741, 44 L.Ed.2d 208 (1975). That case involved the State of New York's policy of reducing pro rata the shelter

allowance provided to AFDC recipients if a nonpaying lodger was living in the recipient's household. The Supreme Court found New York's policy inconsistent with a federal regulation requiring that, in the absence of proof of actual contributions, only the income of a legally obligated parent may be considered in determining the child's eligibility for and the amount of financial assistance. *Id.* at 345, 95 S.Ct. 1741 (discussing 45 C.F.R. § 233.90(a) (1974)). The Supreme Court concluded that New York was violating that regulation because its policy was "based on the assumption that the nonpaying lodger is contributing to the welfare household, without inquiring into whether he in fact does so." *Id.* at 346, 95 S.Ct. 1741. New York's policy thus ran afoul of the federal bar on "assuming that non-legally responsible persons will apply their resources to aid the welfare child." *Id.*[4]

The Fifth Circuit subsequently concluded that the same AFDC regulation was violated by a Texas policy calling for the proration of a recipient's shelter and utility expenses where noneligible persons were living in the recipient's household. *Houston Welfare Rights Organization v. Vowell*, 555 F.2d 1219 (5th Cir.1977), *rev'd on other grounds*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). The Texas policy, like Wisconsin's policy here, had the effect "of lowering the recipient's allowable need so as to lower, in turn, his level of benefits." *Id.* at 1222. The Fifth Circuit found that by implementing such a policy, Texas was violating 45 C.F.R. § 233.90(a), the federal regulation discussed in *Van Lare*:

> The presumption that a recipient's shelter and utility expenses are lowered creating less need when a nonrecipient lives in the

---

4. The decision of the Second Circuit that the Supreme Court reversed in *Van Lare* took a view of New York's policy that was remarkably similar to that of the district court in this case. *See Taylor v. Lavine*, 497 F.2d 1208, 1215–16 (2d Cir.1974), *rev'd*, 421 U.S. 338, 95 S.Ct. 1741, 44 L.Ed.2d 208 (1975). The majority opinion in *Taylor* concluded that New York's proration policy "does not attribute a non-existent obligation of support to the lodger, nor does it deny the AFDC–recipient children or caretaker their share of the actual housing expenditures." *Id.* at 1215. The majority found instead that "[p]rorating housing expenses among recipients and nonrecipients of public aid accounts for the economics

of scale that are realized when individuals live in groups; per-individual housing costs decrease as the number of individuals living together increases." *Id.*; *but see id.* at 1222 (Oakes, J., dissenting) ("It is nonsense ... to say that the cost of housing to the recipient family decreases when there is a nonpaying lodger."). The majority concluded that "the New York scheme does not attribute a false duty of support or a false source of income, but rather accounts for the actual cost of housing to an AFDC–related family." *Id.* at 1216. The Second Circuit majority's view, as we explained above, was flatly rejected by the Supreme Court in *Van Lare*.

household implicitly presumes that the nonrecipient's income is available to offset his share of the shelter and utility costs. If not, the recipient's "need," in terms of actual shelter cost, will not decrease. The [State's] claim that it is only reflecting the economies of scale enjoyed by large groups living together again implicitly presumes that the nonrecipient's income will be available to offset shelter and utilities. Without that presumption, the economies-of-scale argument is irrelevant.

*Id.* at 1224 (citation omitted); *see also Swift v. Toia,* 461 F.Supp. 578, 581–82 (S.D.N.Y. 1978), *aff'd. & adopted,* 598 F.2d 312 (2d Cir.1979), *cert. denied,* 444 U.S. 1025, 100 S.Ct. 687, 62 L.Ed.2d 658 (1980). The same presumption underlies Wisconsin's proration policy in this case. Thus, both *Van Lare* and *Vowell* support our view that by prorating the applicant's need based upon the need standard for the applicant's entire family group, including individuals with income who are not legally responsible for the applicant, Wisconsin is violating subsection (17)(D) in that it is implicitly considering the financial responsibility for the applicant of a non-legally responsible person in the household.[5]

From what we have said about the proration policy, it should be clear that Wisconsin's policy of combining the deductibles of individual family members to establish a deductible for the entire family group also is inconsistent with subsection (17)(D). Whenever a non-legally responsible member of the household, such as a sibling, has a medical assistance deductible that Wisconsin would combine with the applicant's deductible, Wisconsin necessarily would be assigning financial responsibility for the applicant to that non-responsible sibling. Absent the income of that sibling, which produced her own deductible and thus the higher family deductible, the applicant would be entitled to

medical assistance by satisfying only her individual deductible amount. Aggregating deductibles in this way thus takes account of the income of the non-legally responsible sibling and thereby violates subsection (17)(D).

### III.

■ Plaintiffs direct our attention to one other aspect of Wisconsin's medical assistance plan. They take issue with Wisconsin's policy that a disabled parent or caretaker, in applying for medical assistance, is not permitted to deduct from his or her own income that portion which has been allocated to dependent children under the FFU policy. Plaintiffs contend that in some cases, the parent or caretaker's eligibility for medical assistance is therefore determined without regard to the support she provides her dependent children. According to plaintiffs, this policy violates the SSA requirements that a state provide a reasonable evaluation of the applicant's income and resources and that it take into account only income and resources that are actually available to the applicant. *See* 42 U.S.C. § 1396a(a)(17)(B) & (C). We agree with the district court, however, that Wisconsin's plan provides a reasonable basis for determining whether a disabled caretaker will be eligible for medical assistance. *See* R. 19, at 19. Wisconsin is authorized by subsection (17)(D) to allocate a portion of the parent's income to the child in assessing the child's eligibility for medical assistance, and we find nothing in the SSA that requires the State at the same time to take account of that or any of the various other demands on the parent's resources in assessing the parent's own eligibility. We therefore agree with the district court that Wisconsin's treatment of disabled caretakers is consistent with subsections (17)(B) & (C).

---

**5.** We are unpersuaded by defendants' suggestion that other provisions of the SSA somehow authorize the violation of subsection (17)(D) we have described. Although other provisions of the Act require states to develop income standards on a family basis for the medically needy and poverty level categories (*see* 42 U.S.C. §§ 1396b(f)(1)(B)(i) & 1396a(*l*)(2)(A)(i)), nothing in those provisions suggests that the standards may be applied in a manner inconsistent with 42 U.S.C. § 1396a(a)(17)(D). Neither provision, for

example, defines those individuals who are to be included in the family unit, and thus, neither provision requires the system employed by Wisconsin here. Furthermore, defendants offer no authority supporting the principle underlying their argument—that the needs component of the medical assistance equation is exempt from subsection (17)(D)'s financial responsibility rule. As we explained above, we find such a principle to be incompatible with the plain language of subsection (17)(D).

Nor do we think Wisconsin's policy violates the provisions of the Americans with Disabilities Act (*see* 42 U.S.C. § 12132) or the Rehabilitation Act (*see* 29 U.S.C. § 794) prohibiting the denial of government benefits on the basis of a disability. Plaintiffs contend that disabled caretakers are subject to disparate treatment under Wisconsin's medical assistance plan and that the disparate treatment is based on the fact that the caretakers are disabled. Although plaintiffs' articulation of the basis for that theory is vague at best, we take them to mean that under Wisconsin's FFU policy, a parent's income generally is allocated pro rata to the children to whom support is provided and that such an allocation should not then be ignored where the parent herself is disabled and is also an applicant for medical assistance. But the fact that plaintiffs may think Wisconsin's policy unfair in that regard does not imply disparate treatment that is traceable to the caretaker's disability. Rather, the original allocation of the parent's income under Wisconsin's FFU policy is made pursuant to the authorization in 42 U.S.C. § 1396a(a)(17), and that allocation occurs whether or not the parent is herself disabled and whether or not she is applying for medical assistance. The fact that the allocation is then ignored in calculating the parent's own income for medical assistance purposes cannot legitimately be attributed to the applicant's disability.

## IV.

For the reasons we have discussed, the district court's judgment dismissing plaintiff's complaint is affirmed in part and reversed in part. The case is hereby remanded to the district court for further proceedings not inconsistent with this opinion. Costs in this appeal are assessed against defendants.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.